## R. E. LEE MARSHALL *vs.* DOBLER & MUDGE ET AL.

*An Appeal Bond Not Liable For Interest on Sum Allowed For Counsel Fees When Allowance is Sustained on Appeal.*

An auditor's account distributing the funds in the hands of trustees for the benefit of creditors allowed a certain sum to the lawyer who had rendered professional services to the trustees and made other allowances to different persons for commissions, etc. An appeal was taken by some of the creditors from the order ratifying the account and an appeal bond executed which was conditioned to pay, in case the parts of the order appealed against should be affirmed, as well all damages and costs decreed by the lower Court, as all damages and costs that should be awarded by the Court of Appeals. This Court on the appeal reduced all of the allowances made by the account except that to the lawyer of the trustees which was affirmed. Then this action was brought by the administrator of the estate of the said lawyer, who had died in the meanwhile, against the obligors on the appeal bond. The declaration alleged that the appeal had stayed the operation of the order directing payment of the sum awarded in the account to the plaintiff's decedent, and that he had thereby sustained damages measured by the interest on that sum from the time the appeal was taken till the time the cause was remanded and payment actually made. *Held*, that the sum awarded in the account to the counsel was really an allowance to the trustees and merely authorized the latter to pay it out of the funds of the estate, and since neither the Court below nor this Court on appeal directed interest to be paid on that sum, the plaintiff is not entitled to recover.

Appeal from Baltimore City Court (Dennis, J.)

The cause was argued before McSherry, C. J., Fowler, Page, Boyd, Pearce and Schmucker, JJ.

*J. Hanson Thomas* (with whom was *R. E. Lee Marshall* on the brief), for the appellant.

The Court declined to hear *Randolph Barton, Jr.,* and *Edward I. Koontz,* for the appellee.

Boyd, J., delivered the opinion of the Court.

The appellant sued the appellees on a bond given by them on an appeal from an order of the Circuit Court of Baltimore City, passed in a case reported as *National Bank* v. *Dulaney,* 96 Md. 159. Exceptions had been filed to the auditor's accounts which distributed the assets of the Charles A. Vogeler Company and the Court passed an order disposing of the various questions raised, which was divided into twelve paragraphs. Those involved in the former appeal were paragraphs V, VI, VII and VIII. By paragraph V the Circuit Court reduced the commissions of the trustees from eight to six per centum on $238,453.41, by the 6th it reduced the commissions on $194,847.92 from four to two per centum, by the 7th it reduced the compensation allowed Francis T. Homer from $25,000 to $19,484.79, being ten per cent on the last named sum, and by the 8th the allowance of $12,500 to Col. Charles Marshall was reduced to $10,000. On the 13th of March, 1902, the appellees appealed from the allowances made in those four paragraphs and entered into the bond sued on. The trustees took a cross-appeal from the order, in so far as it made the reductions in paragraphs V and VI, and on the 10th day of May this appellant entered an appeal from the order making the reduction of his decedent's compensation— Col. Marshall having died after the passage of the order. In this Court the trustee's commissions were further reduced— two and one-half per cent being allowed on both amounts above mentioned—the allowance to Mr. Homer was further

reduced from ten to seven per centum and that to Col. Marshall was affirmed.   The appeals were heard together and resulted in a decree of this Court reversing in part and affirming in part the order of the Court below.   The costs were directed to be paid out of the funds in the hands of the trustees and the cause was remanded.   The compensation allowed Mr. Homer was for services rendered by him, especially in connection with a sale to a syndicate in London of the business, good will, trade marks, etc., of the Vogeler Company, the trustees having been previously authorized by the Court to employ a member of the Baltimore bar to go to Europe for the benefit of the estate.   They were authorized to expend a sum not exceeding $1,500 for his expenses and to pay him such fee as may seem right and reasonable, subject to the approval of the Court.   Col. Marshall filed a petition setting out at length the services rendered by him to the trustees, and asked for an allowance of proper compensation.

After the disposition of that case by this Court, this suit was brought on the appeal bond.   The theory of the appellant is that by reason of the appellees staying the order by their appeal and bond, he has sustained damages which are to be measured by interest on the ten thousand dollars for the time he and his decedent were deprived of the use of it.   The defendant filed five pleas and the plaintiff demurred to four of them and replied to the fifth.   The defendant demurred to the replication and the Court overruled all the demurrers and judgment was entered for the defendants for costs.   We will not discuss the several demurrers separately, but will give what we deem sufficient reasons for affirming the judgment.   Although the order of Court appealed from directed that there be allowed and paid to Col. Marshall the sum of ten thousand dollars, it must be remembered that it was "as fees or compensation for professional services rendered by or through him to" the trustees.   It was in reality determining what sum the trustees should be allowed to pay him out of the trust funds. It may be that trustees who employ counsel should pay him for his services more than the Court would be justified in allow-

ing out of the fund, as they may employ him to do what they should do themselves, and what they are paid for doing by the commissions allowed them, but when it is proper for the trustee to employ counsel, the law allows him to do so, and inasmuch as it is for the benefit of the estate, the trustee is permitted to compensate the counsel out of the funds in his hands. The allowance is, in theory if not actually, made to the trustee to compensate him for an expense which he is authorized to incur. In *Davis* v. *Gemmell*, 73 Md. 565, JUDGE MILLER said in a separate opinion filed by him, in speaking of counsel fees, "The claims for these allowances are not made by petitions filed by their client, according to the usual practice, but by petitions filed by themselves in their own names; and it is only by treating them as *bona fide assignees* of their proportional parts of the judgment, as specified in the contracts for their contingent fees, that relief can be granted them." That was the theory upon which those allowances were made, as will be further seen by reference to *McGraw* v. *Canton*, 74 Md. 558, and *Chew* v. *Perkins*, 81 Md. xvi (to be found in 31 Atl. Rep. 507). "When compensation is allowed out of a common fund for expenses incurred, and services rendered on behalf of the common interest, it is upon the principle of representation, or agency." *Miller's Eq. Proc.*, 665. So although a practice has grown up in this State of attorneys filing petitions in their own names for compensation for services rendered trustees, strictly speaking such allowances are made to the trustees and they are given credit for so much of the trust funds as they are authorized to pay counsel who have rendered the services. Ordinarily the attorney does not have a claim against the fund, but against the trustee employing him, and the trustee is reimbursed for what he has paid or is to pay, if sanctioned or authorized by the Court. When then the appellees excepted to the audit, they objected to the allowance *to the trustees* in those four paragraphs, and while it is true that Mr. Homer and Col. Marshall were interested in the result, they could only make their claims through the trustees. No such question was raised, but if it had been, it is

not clear that the appeal of the administrator of Col. Marshall, could have been entertained in the former case. It was not a controversy between him and the trustees, but between the appellees and the trustees as to whether they should be allowed to pay Col. Marshall ten thousand dollars or more for his services to them. The appeal of these appellees was docketed in this Court against the trustees, and was there decided, and there was no case in their name against the administrator of Col. Marshall. We mention that to show how it was regarded, not only under the practice of this Court, but by the counsel who took part in the argument, as it was not suggested that there should be a case docketed against this appellant, and the decree was entered in the case against the trustees.

The case as presented by the appeal of those who are now appellees was against the trustees, disputing the four allowances to them as made by those paragraphs of the order appealed from. The trustees' commissions and the compensation to Mr. Homer were materially reduced, and the only item they failed in was the fee allowed Col. Marshall. There were 664 claims distributed to in the audit, all of which profited by the exceptions of these four creditors to the extent they succeeded in reducing the allowances, and yet according to the theory of the appellant, these four creditors are to be mulcted in damages for an amount considerably in excess of any sum they could possibly get from the reduction made by this Court, because they did not succeed in reducing this item. To establish a precedent of that kind might deter creditors from objecting to what they believe to be excessive allowances to trustees or others, to an extent that would seriously affect the proper administration of insolvent estates and cannot be sanctioned by this Court. This estate was administered at enormous and unusual costs and expenses, and, although we do not mean to criticise the trustees, as the character of the assets were such as required the expenditnre of much more than usual, the audits show that the trustees were charged with over a half million dollars but less than half of that amount

was distributed to creditors owing to the large amounts necessarily expended in conducting the business and administering the estate.  By the audit the trustees were allowed nearly thirty thousand dollars commissions, and Messrs. Homer and Marshall were allowed thirty-seven thousand and five hundred dollars fees, besides some fees and expenses previously paid them, and although they were reduced by the Circuit Court of Baltimore City, the commissions and fees for counsel allowed the trustees still amounted to over fifty thousand dollars, notwithstanding the creditors were only getting fifty-five per cent of their claims.  The creditors who prosecuted the appeal cannot therefore be said to have done so without any cause, and the result in this Court showed that it thought they had sufficient grounds to complain against several of the items excepted to.  Although the amount allowed for Col. Marshall's fee was approved of and affirmed, its payment out of the trust fund is upon the theory that his services were for the benefit of the whole estate.  When therefore these four were acting for the benefit of all creditors, if the appellant is entitled to damages, to be measured by interest on the sum allowed his decedent, would it not be simply applying the same principle to them that enables the appellant to be paid out of the trust fund, to allow out of that fund any such damages as they should pay?  One of the conditions of their bond was to pay "in case the said parts of said order shall be affirmed, as well all damages and costs decreed by the said Circuit Court of Baltimore City, as all damages and costs that may be awarded by the Court of Appeals, to be paid by the said appellants." If then the appellant was entitled to such damages on the affirmance of the order, in so far as it affected his claim, he ought to have applied to this Court to allow it out of the fund.

It must be remembered that the claim of Col. Marshall was not against the firm of the Charles A. Vogeler Company, but against the trustees for services rendered to them in the settlement of the estate of that firm.  The Court below did not provide for the payment of interest on the sum allowed, and this Court did not do so, but on the contrary after fully con-

sidering the evidence and all circumstances connected with it affirmed the action of the lower Court, which allowed $10,000 in addition to $1,250 already paid.  If it had thought it should be increased by the equivalent of interest, and its attention had been brought to that, it could have so ordered. Although the statute now provides for judgments being so entered as to bear interest, and an order ratifying and confirming an audit is a judgment of the Court, there are some early cases in this State, the principles of which could still be applied to a claim such as this.  In *Contee* v. *Findley*, 1 H. & J. 331, the Court "Said it was a mistaken idea that interest was *always* given by this Court as a matter of course.  It is in their discretion, and they will allow interest, in the nature of damages, in such cases as they think it should be allowed," and it did allow interest as additional damages.  In *Butcher* v. *Norwood*, 1 H. & J. 485, which was a suit on an appeal bond, the Court said "If the Court of Appeals had been applied to for that purpose, they would have assessed additional damages for the interest which had accrued from the time of the recovery of the judgment in the county Court, to the day when they affirmed the judgment on the appeal from the general Court.  But it appears that the judgment of the general Court was affirmed with costs only.  Non-payment of this judgment is a breach of the condition of the appeal bond, and is only covered by the penalty.  The Court are of opinion that the plaintiff in this case can only recover in this action interest from the day when the Court of Appeals affirmed the judgment of the general Court."  In *Hammond* v. *Hammond*, 2 Bland, 371, the Chancellor after saying that where a debt is liquidated by an auditor's statement confirmed, the whole carries interest from the date to which such confirmation relates, added "And if the debtor should appeal and the judgment below should be affirmed, here as in England, the appellate Court may, according to the express provisions and the spirit of several legislative enactments, add the interest which had accrued upon the judgment below to its aggregate amount, and direct the whole to carry interest from the time of the

affirmance until paid." We see no reason why the principles announced in the above cases cannot be applied to a claim of this kind, if this Court should deem such damages proper, for as we have already said, the question was what sum should the trustees be allowed as compensation for the attorneys, and if the Court had been of the opinion that they should pay the additional sum equivalent to interest, it could have so ordered on application to it.

But this appellant took a cross-appeal from the order of March 10th, 1902, reducing the allowance from $12,500 to $10,000. Without determining whether such appeal could be properly taken by him, the fact is it was taken without objection and the whole question was considered by this Court. It is difficult to see therefore how the appellant could hold the appellees responsible for damages for not paying the $10,000, when he was claiming that it was not sufficient and that he was entitled to $12,500. As long as his appeal was pending, he could not properly require the payment of the $10,000, if these creditors had abandoned the appeal as to that item. He could in no way more forcibly assert his unwillingness to receive the ten thousand dollars as compensation than by appealing from the order reducing the amount to that sum. His appeal as disclosed in the order filed as part of his replication, was from so much of this order "as sustained the exceptions filed in the auditor's account allowing a fee of $12,500 to Charles Marshall for professional services, and allowed to him in lieu thereof the sum of $10,000." It is nowhere suggested that he was willing to accept the ten thousand dollars, but having appealed within the time allowed by law from that order the presumption was that he was not, and having prosecuted his appeal to the conclusion of the case, which was then decided against him, it would present a peculiar condition of affairs to hold this bond responsible for damages because the appellant did not receive the ten thousand dollars under an order of Court which he was himself refusing to accept. If the views of the appellant had been adopted on his appeal, the sum of $12,500 would have been allowed, and

it could hardly be contended that the bond would then have been liable for damages because of the appeal, to be measured by interest on the ten thousand dollars. There certainly could have been no recovery of damages from the date of his appeal and there is no suggestion in the pleadings that prior to that time he was willing to accept the ten thousand dollars in full of the compensation to be allowed his decedent.

So without further reference to the several pleas, or to whether the terms of this bond—"in case the *said parts* of said order shall be affirmed"—are broad enough to authorize the appellant to sue alone, under the circumstances we have stated, we are of the opinion that the appellant is not entitled to recover and the judgment will be affirmed.

*Judgment affirmed, the appellant to pay the costs.*

(Decided July 1st, 1903.)