IN THE MATTER OF THE ESTATE OF RACHEL COLVIN, A LUNATIC.  } DECEMBER TERM, 1853.

[ALLOWANCE OF COUNSEL FEES, &C., TO THE COMMITTEE OF A LUNATIC.]

EXPENDITURES for stationery do not come within the range of disbursements, which a committee or receiver is permitted to make at the expense of the estate.

The first allowance is for costs of the commission, which includes legal costs with counsel fees paid by the petitioner in conducting the inquisition of lunacy, under which the party is found to be a lunatic, these are all allowed unless excluded by a previous order of the court.

Fees paid to counsel for conducting a controversy, as to whether the lunacy did or did not commence at an earlier date than the filing of the petition cannot be allowed out of the estate, they must be paid by the parties who carried it on.

Counsel fees paid for services rendered in litigating the question who should be appointed committee, will not be allowed out of the estate; if the parties interested differ, and choose to litigate this point, they must do so at their own expense.

Fees paid for legal services rendered, the committee, in the discharge of his duty as such, in defending and protecting the estate of the lunatic, are prop-er and fair allowances.

Costs and counsel fees paid by the committee and receiver, in carrying on a controversy in the Orphan's Court after the death of the lunatic in regard to the appointment of an administrator, cannot be allowed out of the estate.

The estate cannot be charged with the cost of a litigation about the appointment of a receiver, the parties carrying on such a controversy must do so at their own expense.

The committee and receiver holds his office at the discretion of the court, and

if a dispute arise in regard to the propriety of continuing him in it, or appointing some one in his stead, it must be conducted by the parties at their own expense.

If the official conduct of the committee be assailed, he may defend it, and if he does so successfully, the assailant will be made to pay costs, but fees to counsel, even in that case, should not be thrown upon the estate.

The committee will be allowed all proper and reasonable fees paid to counsel for advice and assistance in the discharge of his duty, and in aiding him to preserve and defend the estate, but beyond this he cannot go ; if he chooses to carry on a litigation for his office, he must pay the costs himself.

---

[The former opinions of the Chancellor in this case are reported in 3 *Md. Ch. Decisions*, 278. The following opinion was delivered the 13th of February, 1854, upon the hearing of exceptions to the Auditor's report and accounts. The nature and purport of these exceptions sufficiently appear in the opinion.]

---

THE CHANCELLOR :

This case comes before the court upon exceptions to the report of the Auditor, and has been submitted and argued on the part of Benjamin H. Ellicott, the former committee and receiver.

In the Auditor's account, D., filed with his report of the 5th of November, 1853, the receiver is charged with the aggregate amount of sundry vouchers for which he had received credit in the account A., previously reported, amounting to $117 98, and this charge is the subject of the first exception on his part.

The vouchers Nos. 121, 122, 123, 124 and 125, which in part make up the sum credited in account A., are not, in my judgment, proper to be allowed. They are for stationery, which do not come within the range of disbursements which a committee or receiver is permitted to make at the expense of the estate. They are neither legal costs or counsel fees, and so far as I am informed, have never been allowed. The exception, therefore, with reference to these items must be overruled.

But, in my opinion, the vouchers Nos. 126 and 127, are proper to be allowed. Mr. Ellicott was appointed committee of the estate of the lunatic on the 15th of September, 1851, and

it appears to me, these sums come fairly within the rule regulating allowances in such cases.

The second exception of the receiver relates to the charge against him in account D., of $1200, allowed for counsel fees, in account A., being supported by vouchers Nos. 150, 151, 152 and 153, in part. The rule with reference to allowances to the committee of a lunatic is believed to be correctly stated in the *Maryland Ch. Pr.*, 236. The first allowance is for the cost of the commission which the author says is understood to include the legal costs with counsel fees, paid by the petitioner. They are, he says, all allowed unless excluded by a previous order of the court. The estate, in this case, is a very large one, and on that account and because of the necessity of proceeding with great caution in the discharge of his duty, a liberal allowance should be made to the committee for counsel fees paid for professional services rendered him in that capacity.

It appears from the record before me, that there was no doubt of the lunacy of Rachel Colvin when the petition was filed in Baltimore County Court, by Richard C. Warford, in November, 1850, nor that she was in that condition as early as April, 1849. In fact, Elisha Warford and those who co-operated with him, insisted that her lunacy commenced at an earlier period, and it was the controversy in relation to this point which produced much of the expense attending the proceedings before the cause was transferred to this court. Fees paid to counsel for conducting this part of the controversy, cannot be allowed out of the estate. They must be paid by the parties who carried it on, for purposes interesting to themselves. The voucher No. 150, was, therefore, properly rejected by the Auditor in account D.

Nor can counsel fees be allowed for services rendered the parties in that part of the case which related to the person who should be appointed committee. If the parties interested, differ and litigate this point, they must do it at their own expense. Elisha Warford, and those who united with him, objected to the appointment of Richard C. Warford and his sister, and recommended Mr. Ellicott. They succeeded, but it does not fol-

low, that the counsel employed by them are to be paid out of the estate. The counsel fees referred to in the book of practice before mentioned, are fees paid by the petitioner in conducting the inquisition of lunacy under which the party is found to be a lunatic. In this case the petition for the writ *de lunatico inquirendo* was filed by Richard C. Warford, and not by Elisha Warford, the person upon whose recommendation, with others, Ellicott was appointed committee of the estate. The former has preferred no claim for an allowance, and the latter is entitled to none for legal services rendered in litigating the question of a proper person to be appointed. The law designates no person who shall be appointed committee, and, therefore, it is unlike the case of *Young ex parte*, 8 *Gill*, 285, where it was decided that an administrator, whose right to administer was successfully established, would be allowed for counsel fees. Upon this principle, the vouchers, Nos. 151 and 152, were properly rejected by the Auditor. It has been already stated, that the petition upon which the writ to inquire into the lunacy of Miss Colvin issued, was filed by Richard C. Warford, and that Elisha Warford and his associates interposed, not for the purpose of disputing her lunacy, but to show that it commenced at a period anterior to the time found by the jury, and the great mass of evidence contained in the record was directed to that point. The voucher No. 151, upon its face shows that it was for services rendered to Elisha Warford and his associates in that part of the controversy. It is apparent from the voucher, that the money was paid for services rendered upon the petition of *Elisha Warford and others against Richard C. Warford and another*, and had reference to the question which they were litigating respecting the period of the commencement of the lunacy of Rachel Colvin. The commission of lunacy which issued on the petition of Richard C. Warford had already been executed when Elisha Warford and others interposed, by their petition, and objected to the inquisition, because it did not carry the lunacy back to an earlier period. Surely costs incurred in a controversy of this nature cannot be regarded as costs of the commission. Voucher No. 152, appears to be for legal services

as to the appointment of the committee, and this for the reason before stated, cannot be allowed.

But, in my opinion, a credit should be allowed for the sums mentioned in voucher No. 153. They appear to have been paid for legal services rendered the committee in the discharge of his duty as such, in defending and protecting the estate of the lunatic, and are, therefore, proper and fair allowances.

The third exception of the receiver is against the charge in account D., of two-thirds of the costs of suit allowed him in account A., and it appears to me, the exception is well taken. Upon the face of the account they are stated to be the petitioner's costs, and come within the rule applicable to such cases.

The fourth exception refers to the charge in account D., of $175, for rent of dwelling house of the deceased, Rachel Colvin, from the 25th of January, 1853, to the date of the account. She died on the 24th of January, 1853, and this fact was brought to the notice of the court by a petition filed by Mr. Ellicott, on the 2d of February following, in which, upon the grounds and under the circumstances therein stated, the order and direction of the court was asked to protect the committee from responsibility. By a previous order, he had been authorized to occupy the dwelling house, and he set forth in his petition that he could not afford to pay the rent such a house would command, and he desired to know whether, now that the lunatic was dead, he should continue to act as before, in the capacity of committee, until some person should appear authorized to take possession of the estate. Upon this petition no order was passed, the court thinking that the death of the lunatic put an end to the authority and office of the committee, and Mr. Ellicott, in his natural capacity, having no interest in the estate, it was thought a petition to meet the emergency should be filed by an interested party, and accordingly, on the 8th of February, 1853, a petition was filed by certain of the next of kin, and heirs at law of the deceased, in which, referring to, and adopting the statements contained in the petition of Mr. Ellicott, they pray for his appointment as receiver. Upon this petition, and in view of the urgency of the case as disclosed by the peti-

tion, an order passed the day following appointing Ellicott the receiver, and authorizing him to take charge and possession of the estate, and hold and manage it in all respects in his new capacity as he had done as committee. And under this order, in my opinion, he is not properly chargeable with rent for the short period which elapsed between its date and the revocation of his office of receiver, on the 19th of April, 1853. But from this latter date, he is chargeable, if he held and occupied the house. His right to continue in it, as he had done during the life of the lunatic free of rent, expired when he was removed from the office of receiver, and he must pay a fair rent if he did so continue.

The fifth exception is directed against the Auditor's account B., for not allowing the sum of $120 paid by the committee to counsel. Not having the voucher before me, I cannot say whether this sum should or should not be allowed. But the views already expressed with regard to allowances of this character, will enable the Auditor to allow or reject it when the case is again before him. And this disposes of the exceptions of the committee and receiver.

The exceptions of David Warford to the allowance of vouchers Nos. 150, 151 and 152, have been disposed of in what has been said in the previous part of this opinion, and there remains only those of Richard C. Warford, administrator and receiver, which apply to the account E., stated at the request as alleged of Mr. Ellicott.

In this account, the receiver, Mr. Ellicott, is credited with the sum of $320, upon vouchers numbered from 265 to 270, inclusive. The sums mentioned in vouchers Nos. 265 and 266, seem to me proper to be allowed, being for legal services rendered the committee as such in matters interesting to the estate. The sum of $5, mentioned in voucher No. 267, is a proper allowance, but that of $15, in the same paper, for services rendered in the Orphans Court of Baltimore County, cannot be allowed without further explanation.

No allowance can be made for the sums mentioned in vouchers Nos. 268, 269 and 270. It was certainly no part of Mr. Elli-

cott's duty as committee or receiver, to carry on a controversy in the Orphans Court about the appointment of an administrator, and if he thought proper to do so, the estate is not to be burdened with the expenses attending it. Nor is it proper to charge the estate with the cost of a litigation about the appointment of a receiver. If other persons thought proper to carry on a controversy of that description, well and good, but they must do so at their own expense. The committee and receiver, so long as he fills those offices, will be, and has been, allowed all proper and reasonable fees paid to counsel for advice and assistance in the discharge of his duty, and in aiding him to preserve and defend the estate. But beyond this he cannot go. If he chooses to carry on a litigation for his office, he must pay the costs out of his own pocket. He holds the office at the discretion of the court, and should a dispute arise in regard to the propriety of continuing him in it, or appointing some one in his stead, the controversy must be conducted by parties interested in the estate, and at their own expense.

If, to be sure, the official conduct of the committee is assailed, he may defend it, and if he does so successfully, the assailant will be made to pay the costs, but fees to counsel, even in that case, should not, as I apprehend, be thrown on the estate. But here Mr. Ellicott was unsuccessful. He was removed from the office of receiver, and hence it follows, he was wrong, in the judgment of the court, in resisting the application of the party who proceeded against him. To allow him to throw his counsel fees on the estate under such circumstances would, I think, be manifestly improper.

I am not aware of any objections of the parties which have not been considered and decided, and shall send the case to the Auditor to state accounts in pursuance of the views hereinbefore expressed.