THOMAS B. HORTON ET AL. *v.* GRACE
E. HORTON, ADMINISTRATRIX.

[No. 16, January Term, 1930.]

*Decided March 12th, 1930.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Benjamin Chambers,* with whom was *Daniel B. Chambers* on the brief, for the appellants.

*J. Kemp Bartlett, Jr.,* and *C. Damer McKenrick,* with whom were *Bartlett, Poe & Claggett* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

The single question presented by this appeal is whether the appellee, Grace H. Horton, administratrix of the estate of Thomas B. Horton, is entitled to pay out of the estate of her decedent fees charged by counsel for services rendered in support of her claim to administer on the estate of her deceased husband.

Mr. Horton died on August 28th, 1928, and on September 1st, 1928, on her application, letters of administration on his estate were granted to his widow by the Orphans' Court of Baltimore City. Besides his widow, he was survived by Marie G. Gischel and Thomas B. Horton, Jr., children by a former marriage, and on September 13th, 1928, they filed in the Orphans' Court of Baltimore City a petition asking that the letters granted to Mrs. Horton be revoked on the ground that they had had no notice or knowledge of Mrs. Horton's application for letters of administration on their father's estate, nor any opportunity of presenting to the court reasons why letters should be granted to them or to one of them. Mrs. Horton answered the petition, and the matter was set for a hearing, but at the hearing the court denied the petitioners the right of supporting the allegations of their petition by evidence, and summarily dismissed it. That action was reversed by this court, on the ground that the two children, the appellants in that case, both of whom resided within the state, were entitled to notice of the intestacy of the decedent and an opportunity of applying for a grant of letters of administration on his estate, and that, if the court had granted letters in violation of that right, the grant was premature and improvident. But as neither party to that appeal had been permitted to offer evidence in the orphans' court in connection with the allegations of the petition as to notice, the case was remanded that such evidence might be offered and considered by the court. See 157 Md. 127.

Following the remand, Mrs. Horton filed in the Orphans' Court of Baltimore City a petition, in which she alleged that, in the performance of her duties as administratrix of the

estate of Thomas B. Horton, "it was necessary" for her to employ counsel, and that she had employed Messrs. Bartlett, Poe & Claggett, "who rendered professional services," described in five separate items, lettered a, b, c, d, and e. Item a referred to the preparation of papers relating to the sale of an automobile; b referred to the preparation of papers relating to the sale of a diamond ring; c to services rendered in reporting these sales, and e to the preparation of a petition authorizing the administratrix to pay "certain funeral and other expenses." Item d related to services rendered the appellee in defending her claim to the privilege of administering the estate of her deceased husband, which are thus described:

"That on or about the 13th day of September, 1928, a petition was filed in this Honorable Court by Thomas B. Horton, Jr., and Marie G. Gischel, the son and daughter respectively of the decedent, praying that this Honorable Court might revoke the letters of administration theretofore granted to your petitioner, and that your petitioner had numerous conferences with her said attorneys, who prepared and filed in this Honorable Court an answer to the said petition and who prepared for the trial of the issues raised thereby, among other things going to Annapolis and examining certain land records and recording; that your petitioner's said attorneys appeared in this Honorable Court upon the 19th day of October, 1928, and the issues raised by said petition and answer were heard and argued, with the result that the said petition was dismissed by this Honorable Court; that thereafter on the 15th day of November, 1928, an order of appeal to the Court of Appeals was entered by the said Thomas B. Horton, Jr., and Marie G. Gischel, and that thereafter because of the fact that no court stenographer had been present at the hearing on October 19, 1928, it was necessary for your petitioner's said attorneys to meet with Messrs. Daniel B. Chambers and Benjamin Chambers, attorneys for the said Thomas B. Horton, Jr., and Marie G. Gischel, in this

Honorable Court, for the purpose of preparing a stipulation to accompany the record to the Court of Appeals; that in addition it was necessary for your petitioner's said attorneys to examine the record before it was transmitted to the Court of Appeals, prepare a brief and argue the said cause in the Court of Appeals, all of which they did, a copy of said record and brief being filed herewith and marked Exhibits "A" and "B", respectively; that the opinion of the Court of Appeals was rendered on the 21st day of March, 1929, and is to be found set forth in the Daily Record of April 5, 1929; that by said opinion the order of the Orphans' Court dismissing said petition was reversed and the case remanded for further proceedings in accordance with the views expressed in that opinion by the Court of Appeals, the costs of said proceedings to be paid out of the estate; that thereupon your petitioner's said attorneys caused the issues raised by said petition to be set down for trial in this Honorable Court, interviewed witnesses and prepared for the trial of said issues; that they appeared in this Honorable Court, together with your petitioner and her witnesses, on the day said cause was set for a hearing and were present the whole of that day and the next two succeeding days examining and cross-examining witnesses and arguing said cause, which resulted in your petitioner being reappointed administratrix of said estate."

The petitioner further alleged that her attorneys "have charged your petitioner" the sum of $750, "for the services above set forth." Attached to the petition was an affidivat and a certificate of Mr. E. J. D. Cross and Mr. William L. All, two members of the bar of Baltimore City, certifying that they had read the petition and had considered "the nature and character of the professional services rendered as set forth therein," and that in their opinion "the sum of $750 would be a fair and reasonable fee for such services." Upon the petition, affidavit and certificate, the court, by an *ex parte* order, allowed the fee as prayed, "subject to the usual excep-

tions," and on the same day, August 16th, 1929, Mrs. Horton filed her first administration account, in which she craved an allowance for the payment of $750 to Messrs. Bartlett, Poe & Claggett, for professional services rendered the estate, as "per order of the orphans' court dated the 16th day of August, 1929." On September 20th, 1929, Thomas B. Horton, Jr., and Marie G. Gischel excepted to that account, and especially to the allowance of the $750 counsel fee as an administration expense. The ground of the exception was that the litigation involving the adjudication of Mrs. Horton's right to administer her husband's estate was not conducted for the security of the estate, but for the personal and individual benefit of Mrs. Horton, and that therefore the cost of it was not a proper administration expense. The exceptions were set down for hearing under a stipulation that "due regard" should be given by the court to the petition filed by the administratrix for the allowance of attorneys' fees out of said estate, and also the exceptions thereto filed by the said Thos. B. Horton, Jr., and Marie G. Gischel, distributees, to the allowance of said attorneys' fees as set out in the first administration account filed in the above entitled estate." So far as the language of that stipulation has any meaning at all, it is that the exceptions were to be heard upon the allegations of the petition for a counsel fee and the exceptions thereto. It assumed that the exceptions operated as an answer to the petition, and the procedure was analogous to setting a case in a court of equity down on bill and answer. Under such conditions the truth of all relevant and material allegations of the petition will be assumed. *Horton v. Horton, supra.* A hearing was accordingly had and, on November 6th, 1929, an order was passed dismissing the exceptions to so much of the account as allowed the administratrix to charge the estate with the counsel fee, to which reference has been made, and ordering the administratrix to pay the fee. This appeal is from that order.

The appellee's petition alleged that the fee of $750 covered not only services rendered in connection with the litigation

involving her right to administer her husband's estate, but also services rendered in aiding her to properly discharge her administrative duties. But in this court, in the brief filed on her behalf, it is stated that: "It is the appellee's intention to claim an allowance only for those services rendered in connection with the various hearings in this honorable court and the court below, as specifically set forth in paragraph (d) of her petition. The appellee is not, therefore, claiming an allowance for services rendered, as set forth in paragraphs (a), (b), (c) and (e)." And it may be inferred from the record that she took the same position at the hearing on the exceptions in the orphans' court. But whether that was so or not, it is clear from the record that the court, in fixing the fee, excluded any allowance for the services described in paragraphs a, b, c, and e, of the petition. So that the certificate of Messrs. All and Cross that the fee was reasonable, strictly speaking, was no longer in point, because it showed on its face that it was based upon a consideration of the petition, which at the time included a description of the legal services described in those paragraphs for which the appellee then claimed an allowance as an administrative expense, a claim abandoned by the appellee or denied by the court at the hearing, as well as a description of services of counsel in connection with the litigation involving her right to administer the estate, for which she did claim an allowance, and which was allowed by the court. The orphans' court also, through some inadvertence, assumed that the petitioner claimed an allowance for counsel fees "to her attorneys for searching certain land records" as an independent item, whereas there is not a word in the petition from which it can be inferred that the petitioner asked any allowance for such services or even that she had ever employed counsel to search land records, except in connection with the litigation relating to her right to administer her husband's estate, and, since the court failed to itemize or apportion the fee, it does not appear how much of it was allowed for services for which appellee makes no claim, or which were never

rendered at all, or how much of it was allowed for services rendered by counsel to the appellee for defending her right to administer her husband's estate. And since its opinion clearly indicates that, in fixing the amount of the fee, the court was influenced to some extent by the fallacious assumption that the petitioner claimed an allowance either for the services described in paragraphs a, b, c, and e of her petition, or for services rendered by "her attorney for searching certain land records", treated as an independent item, its order was for that reason alone obviously erroneous.

But the substantial question presented by the appeal is whether the estate should have been charged with counsel fees incurred by the appellee in asserting her claim to letters of administration on her husband's estate.

On the former appeal, the case was remanded that evidence might be taken in connection with appellants' contention that letters of administration on the estate of Thomas B. Horton had been granted to the appellee in this case without notice to them or either of them. And in that case it was held that if it appeared that such letters had been granted without proper notice, that the grant was premature and improvident. The record in this case contains neither docket entries, nor any reference to a hearing on the issues raised by the petition originally filed by the appellants for the revocation of the letters granted to Mrs. Horton on September 1st, 1928, other than what is found in the appellee's petition for the allowance of a counsel fee. We are therefore required to resort to conjectural inferences drawn from the allegations of that petition, in search of facts which must have been known to the parties and which should have been stated in the record. In paragraph b of the petition it is alleged "that due to the letters of administration issued to your petitioner having been revoked and she having been re-appointed administratrix of this estate, it was necessary for her said attorneys to prepare petitions twice with respect to the sale of the diamond ring herein mentioned." In paragraph d it is alleged that when the case was by this court remanded to the

Orphans' Court of Baltimore City for further proceedings, appellee's attorneys caused the "issues raised by said petition," referring to the petition of September 13th, 1928, to be set down for a hearing.

It is further stated in the same paragraph that after that hearing Mrs. Horton was "reappointed." It may therefore be fairly inferred that the original grant of letters to her was revoked, and that the "issues," which the court considered at the hearing held after the case had been remanded, were whether letters of administration on the estate of Thomas B. Horton should be granted to Mrs. Horton or to one of the appellants. In other words it was a contest between three applicants, all eligible, for the privilege of administering that estate.

The appellee's contention therefore is (1) that she should be allowed counsel fees for defending her right to the letters which were revoked, and (2) that she should be allowed counsel fees for asserting her claim for reappointment after the revocation of her original letters.

Her first contention is based on the theory that, having once obtained the right to administer, she was entitled to defend it at the expense of the estate even though the grant was invalid, while her second involves the proposition that as the successful applicant she is entitled to counsel fees for prosecuting her application. In our opinion neither contention is tenable.

At the death of Mr. Horton, three persons, his widow and his two surviving children, formed a class, each member of which was eligible to administer on his estate. Code, art. 93, sec. 18. One member of that class, Mrs. Horton, promptly applied for letters of administration on the estate of Mr. Horton, and on the same day, without any summons or notice of any kind to the other two members of the class, letters were granted to her. She qualified as administratrix, and proceeded to administer the estate. Within two weeks after her appointment, by a petition filed in the Orphans' Court of Baltimore City, which she answered, her attention,

and that of the orphans' court, was called to the fact that neither of the two surviving children of Mr. Horton had been notified that his widow had applied for letters on his estate, and that neither of them had been given any opportunity of requesting the court to appoint one of them to administer it. In her answer to that petition, Mrs. Horton asserted that the petitioners had been notified of her intention to apply for letters of administration on their father's estate, but the issue thus raised appears to have either been abandoned by her, or to have been decided against her, since her letters were subsequently revoked. So that, from the time when her attention was first called to the petition for the revocation of her letters, she must have known that her appointment was invalid. And when, under such circumstances, instead of surrendering the office, and filing a new application for letters, she elected to contest the revocation of her letters, she did so at her risk, and the estate should not be charged with the expense of the resulting litigation. It has been held that where one has an exclusive right to administer on an estate, he is entitled to be allowed out of the funds of the estate reasonable counsel fees incurred in the defense of that right. *Ex parte Young*, 8 Gill, 285. But that case can not well be invoked as authority for allowing counsel fees to one who, having no such exclusive right, secured letters of administration before other eligible persons residing within the state had any notice or knowledge that she had even applied for them. Counsel fees can only be allowed for services rendered for the "recovery and security of the estate." *Ex parte Young, supra;* Code, art. 93, sec. 5. And it is not apparent how services rendered in defending letters of administration, which were ultimately revoked because they were prematurely or improvidently issued, can be said to be for the benefit of the estate. Whatever force the reasons stated by the court in *Ex parte Young, supra,* that, where one has an exclusive right to letters of administration, "his relation to the estate binds him to defend it," and that to require him in such a case to defend it at his own cost might drive

him to abandon it and so defeat the policy of the statute, may have had in that case, they certainly have none in this. The policy and purpose of the statute is that, where several persons forming a class are all equally entitled to administration, that no one of them shall be appointed until all residing within the state shall have had an opportunity to apply for letters, and until the court has considered the qualifications of all who do apply. But to allow one, to whom, as a consequence of superior diligence, letters have been isued in total disregard of the rights of other members of the class equally entitled, to defend his position at the expense of the estate, might, and in this case would, result in compelling them to pay expenses incurred by the administrator in denying them a right to which under the law they were entitled. Certainly the statute never contemplated any such result, and in our opinion no allowance should have been made to the appellee for counsel fees for services rendered to her, prior to the revocation of the letters originally granted to her, in defending her right to administer the estate of Thomas B. Horton.

After the revocation of the letters originally granted to her, she and the appellants all applied for letters, all were eligible, and all stood in the same position before the court. The interest of each was entirely personal. There is nothing in the record to indicate that the estate would not have been administered as well by one as by another of the applicants. As was said in *Smith v. Young,* 5 Gill, 204, where there was an objection to the qualifications of an applicant for letters of administration: "The law requires of all who administer upon the estate of a deceased person, bond with ample security for the faithful performance of the duties which they undertake." The record contains nothing to indicate that the recovery or security of the estate was in any way involved in the court's choice. The real and substantial interest involved in the litigation was that of the several applicants in the commissions on the estate. Under such circumstances, we know of no reason why the funds of the estate should be devoted to paying expenses which were essentially personal

to the successful applicant, and which had no possible relation to the "recovery or security of the estate." In *Ex parte Young, supra,* where it was held that the successful applicant for letters of administration was entitled to counsel fees incurred in prosecuting his application, after referring to the fact that, after letters have been granted, counsel fees may be allowed for prosecuting and defending claims in the discharge of the duties of administration, the court said that: "The principle upon which the rightful party, designated by law, claims the administration, and incurs the expense of securing it, must be presumed to be the same—the recovery and security of the estate from the claim of one who has no legal right to disturb it." But here the expense was incurred in resisting the claims of others who had the same legal right to administration as the appellee, and the case falls rather within the principle announced in *Estate of Colvin,* 4 Md. Ch. 128, where the chancellor said: "Nor can counsel fees be allowed for services rendered the parties in that part of the case which related to the person who should be appointed committee. If the parties interested differ and litigate this point, they must do it at their own expense. Elisha Warford, and those who united with him, objected to the appointment of Richard C. Warford and his sister, and recommended Mr. Ellicott. They succeeded, but it does not follow, that the counsel employed by them are to be paid out of the estate. * * * The law designates no person who shall be appointed committee, and, therefore, it is unlike the case of *Young, Ex parte,* 8 Gill, 285, where it was decided that an administrator, whose right to administer was successfully established, would be allowed for counsel fees."

Some reliance is placed upon a supposed analogy between the position of the administratrix in this case and that of an executor named in a will to which a caveat has been filed after probate. And it is contended that, because counsel fees may be allowed the executor for defending the will in such a case, they should be allowed the administratrix in this case for prosecuting her application for administration, and again

reference was made to *Ex parte Young, supra.* But clearly there is no such analogy. In the *Young* case the administratrix had the sole exclusive legal right to administration if she applied for it, and, in the opinion of the court, her relation to the estate placed her under an obligation to defend that right. If that was so, there was some analogy between the position of the administratrix in that case and that of an executor defending a will after probate. But in this case the appellee was but one of a class, and there was no possible duty or obligation resting upon her to apply for administration, and there is a closer analogy between her position and that of an executor named in a will defending it against a caveat filed before probate, and in such a case it is well settled that the executor is not entitled to counsel fees. *Tilghman v. France,* 99 Md. 616. In our opinion, therefore, the appellee was not entitled to an allowance for counsel fees incurred in prosecuting her application for a reappointment as administratrix of her husband's estate after the revocation of her original letters (*Louisville Trust Co. v. Fidelity & Columbia Trust Co.,* 209 Ky. 289; *Cate v. Cate* (Tenn.), 43 S. W. 366; *Wilbur v. Wilbur,* 17 Wash. 683; *In re Byrne's Estate,* 122 Cal. 260; 24 C. J. 102; *Woerner, Administration,* sec. 517, page 1789, notes 5 and 6), nor to counsel fees for services rendered in connection with the litigation which resulted in the revocation of her original letters. It follows that the order of the Orphans' Court of Baltimore City allowing her for such fees was erroneous, and must be reversed.

> *Order reversed, and case remanded for further proceedings in accordance with the views expressed in this opinion, with costs to the appellants.*