IN THE MATTER OF THE ESTATE OF JAMES L. MOORE, DECEASED

No. 80

(Filed 8 February 1977)

1. **Executors and Administrators § 1— right of testator to name executor — rights of person nominated**
   A testator has the right to name the person who shall administer his estate after his death, provided his designate is not disqualified by law; similarly, the person he names as executor has the right to administer his estate, and he can be deprived of that right only by his refusal or neglect to probate the will or to take out letters, or by his inability or unsuitableness to execute the trust.

2. **Executors and Administrators § 1— statutory disqualifications**
   Statutory specifications of disqualifications for service as a personal representative cannot be superseded by the general policy of the law to give effect to the desires of a testator.

3. **Executors and Administrators §§ 1, 5— nominated executor — disqualification for conflict of interest**
   When it appears that the personal interests of the prospective executor are so antagonistic to the interests of the estate and those entitled to its distribution that the same person cannot fairly represent both, the testator's nominee is unsuitable and disqualified as a matter of law and should not be appointed, G.S. 28A-4-2; and when conditions arise after his appointment which will prevent him from

In re Moore

faithfully and impartially executing the duties which he has assumed, cause for removal exists.

4. **Executors and Administrators § 37— proceeding to disqualify nominated executor — taxing of costs and attorneys' fees**

In a proceeding to determine whether a testator's nominee is disqualified to serve as his executor, the nominee is a party to the will within the meaning of the statute permitting the court to award costs, including attorneys' fees, in a proceeding to fix the rights of a party to the will, G.S. 6-21(2).

5. **Executors and Administrators § 37— rejection of nominated executor — award of costs and attorneys' fees**

Albeit G.S. 6-21(2) authorizes the trial judge in his discretion to award costs, including attorneys' fees, in the instances specified therein, it is quite clear (1) that he should not award costs and attorneys' fees to an executor-designate whose claim for appointment is rejected unless the claim was reasonable, made in good faith, and *prima facie* in the interest of the estate; and (2) that the judge has no discretion to tax costs against an estate when the nominated executor was disqualified to act as a matter of law.

6. **Executors and Administrators §§ 1, 37; Appeal and Error § 68— disqualification of nominated executor — conflict of interest — law of the case — costs and attorney's fees**

The holding of the Court of Appeals that testator's nominee was legally disqualified to serve as executor because of a conflict of interest became the law of the case when the Supreme Court denied a petition for discretionary review of that decision, and because of this legal disqualification the nominee is not entitled to recover costs and attorney's fees in pressing his claim for appointment as executor.

7. **Executors and Administrators § 37— proceedings prior to probate of will — costs and attorney's fees of nominated executor**

Where a testator's widow filed with the clerk her petition to probate a 1965 will and for an order disqualifying testator's nominee as executor, and the nominee knew that the widow had in her possession a paper writing executed in 1973 which purported to be testator's last will and that he was not named as executor therein, the nominee was entitled to the advice and assistance of counsel up to the time the 1965 instrument was probated as testator's last will, and the court, in its discretion, could allow him to recover his necessary costs, including a reasonable fee for his attorney's services in responding to the widow's petition and in adverting the court to the existence of the 1973 paper writing.

8. **Executors and Administrators § 37— amount of attorney's fee — value of estate**

In determining the amount to be awarded as an attorney's fee for services rendered to a nominated executor, the court should evaluate the services rendered without reference to the value of the estate.

ON petition for discretionary review of the decision of the Court of Appeals (29 N.C. App. 589, 225 S.E. 2d 125 (1976)), reversing an order entered by *Collier, J.,* at the 27 October 1975 Civil Session of CABARRUS. This case was docketed and argued as Case No. 121, Fall Term 1976.

This proceeding was begun on 19 February 1974 when Eloise T. Moore, the widow of James L. Moore (Moore), who died 19 December 1973, filed with the clerk of the superior court a petition to probate a paper writing dated 10 October 1965 purporting to be the last will and testament of her deceased husband. In the document she was named sole beneficiary and Robert A. McClary (McClary) was named executor.

In the petition Mrs. Moore alleged, *inter alia,* that: (1) the approximate value of Moore's estate was $840,157.50, of which $833,000.00 was represented by a certificate of deposit of money received and notes receivable from a purported sale to Robert G. Hayes (Hayes) of 1,040 shares of the common stock of Kannapolis Publishing Company; (2) that at the time of the purported sale in August 1973 Moore lacked sufficient mental capacity to understand the nature and effect of the purported sale; (3) petitioner desired decedent's personal representative to institute an action for the rescission of said purported sale; (4) because of the personal and business relationship of Mc-Clary to Hayes (details alleged in the petition), his personal interests are so antagonistic to those of the estate and its sole beneficiary that they cannot be reconciled. Because of this conflict of interest Mrs. Moore prayed that the clerk not issue letters testamentary to him.

In response to the petition, filed 28 February 1974, McClary alleged he was informed that Mrs. Moore had in her possession another paper writing executed by Moore on 15 August 1973 which purports to be his last will; that pending its production and a judicial determination whether it should be probated, any ruling the court might make relating to his right to letters testamentary under the 1965 paper writing would be moot and premature. He prayed "that the proper paper writing be probated" as Moore's last will and that he granted leave to answer Mrs. Moore's petition thereafter.

In consequence of the information contained in McClary's response to Mrs. Moore's petition, the clerk of the superior court issued a subpoena to Gaither S. Walser, attorney for Mrs.

In re Moore

Moore, to produce the 1973 paper writing referred to therein. He delivered the document to the clerk "without prejudice to the right to contest the validity of the same." Whereupon the clerk declined to probate the 1965 paper writing pending a determination of the validity of the 1973 paper writing, which purported to be the last will of Moore. Thereafter, on 26 April 1974 Judge Robert M. Martin, judge presiding, entered an order directing the clerk, as judge of probate, to probate the paper writing dated 10 October 1965 as Moore's last will.

The 1973 paper writing is not in the record before us. However, we obtain the following information from the statement of facts in the opinion of the Court of Appeals on the first appeal of this case: "In August of 1973, Moore sold certain corporate stock in Kannapolis Publishing Company to Robert G. Hayes and executed another paper writing, dated 15 August 1973, purporting to be his will, not only leaving the majority of his estate to his wife, but also naming her as executrix." *In re Moore,* 25 N.C. App. 36, 37, 212 S.E. 2d 184, 185 (1975).

There was no exception or appeal from Judge Martin's order. On 9 May 1974 the clerk admitted the 1965 paper writing to probate as the last will of Moore. Upon the probate of the 1965 paper writing as Moore's last will, McClary immediately replied to Mrs. Moore's petition that he not be issued letters testamentary under it. He denied that any conflict of interest existed between the duties he would owe the estate and Hayes. He alleged that, pending his qualification as executor and his subsequent "investigation into all of the facts and circumstances of the administration of the estate of James L. Moore, it is premature and presumptuous to speculate on a conflict of interest"; that he is a licensed certified public accountant, subject to the ethics of his profession which he honors; and that as executor he would be subject to the dictates of the court, and "the petitioner would have an adequate remedy at law as to any possible impropriety on the part of the respondent."

After a plenary hearing upon McClary's application for letters testamentary (filed 8 May 1974) and Mrs. Moore's petition that such letters not be issued to him, the clerk found facts upon which he concluded that "there is no conflict of interest which legally disqualifies" McClary from serving as executor of the estate of Moore. On 22 August 1974 he signed an order that letters testamentary be issued to McClary upon his

In re Moore

taking the proper oath. The pertinent facts found by the clerk are summarized below:

McClary, age 50, had been a duly licensed certified public accountant since 1950 and headed his own accounting firm. Since 1955 he has been engaged on a year-to-year basis to prepare the annual financial statements, franchise and income tax returns of Central Distributing Company and its affiliate, Mainliner Oil Company, corporations engaged in the business of distributing oil in the Kannapolis area. McClary individually has prepared these annual statements and tax returns. Hayes is the president and chief executive officer of Central Distributing Company, and he is the individual with whom McClary has "made his oral contract for the accounting services to be rendered by him." At the time of the hearing McClary expected shortly to begin work for Central Distributing Company for the year ending 31 March 1974 and to complete this work by 15 June 1974. McClary discusses with Hayes any matters requiring discussion during the course of his accounting service to the Company. Hayes has never expressed any dissatisfaction with McClary's services.

McClary had assisted Moore in his financial affairs from about the year 1955 until the date of his death and had prepared all of his income tax returns. He did not participate in the transaction involving Moore's sale of the Publishing Company stock to Hayes, but Mrs. Moore informed him by telephone that the transaction had been consummated and that she was dissatisfied with it. McClary has never discussed the transaction with Hayes.

Mrs. Moore, as sole beneficiary of the estate, contends that at the time Hayes purchased Moore's Publishing Company stock Moore lacked sufficient mental capacity to understand the nature of the transaction and that an action should be instituted against Hayes for rescission. McClary testified on the hearing that upon his qualification as executor he would investigate the facts of the sale and if he found merit in Mrs. Moore's desire that an action to rescind the sale be instituted he would take such legal action.

Mrs. Moore excepted to the clerk's conclusions of law and to his order that letters testamentary issue to McClary and appealed to the superior court. Judge Long heard the appeal on 12 September 1974 and concluded "as a matter of law that the facts found by the Clerk establish a conflict of interest which legally disqualifies Robert A. McClary from qualifying and

serving as Executor." Whereupon he entered judgment reversing the order of the clerk that letters testamentary be issued to McClary as executor of Moore and remanding the cause to the clerk for the appointment of an administrator c.t.a. of the estate of James L. Moore.

Upon McClary's appeal, the Court of Appeals affirmed Judge Long's judgment. *In re Moore,* 25 N.C. App. 36, 212 S.E. 2d 184, *cert. denied* 6 May 1975, 287 N.C. 259, 214 S.E. 2d 340 (1975). Thereafter, on 25 May 1975, Jack E. Klass was appointed administrator c.t.a. of the estate of James L. Moore.

On 2 October 1975 McClary and his attorney, John Hugh Williams, under the provisions of G.S. 6-21(2), petitioned the presiding judge for the sum of $206.05 expended by McClary "for court matters" and a reasonable attorney's fee for Mr. Williams be taxed as a part of the costs incurred in the proceedings to determine the right of McClary to qualify as executor of the will of James L. Moore. In support of his motion for fees, Mr. Williams submitted an affidavit in which he stated that he had not kept "a completely accurate record" of the time devoted to the "assertion of McClary's rights under the will of James L. Moore," but he estimated it to be in excess of one hundred hours.

Judge Collier heard the petition on 27 October 1975 and "determined in his discretion that under the provisions of G.S. 6-21" McClary should be reimbursed for costs incurred in court proceedings in the amount of $206.05 and that "in view of the size of the estate with assets approximating $900,000.00 and the involved nature of the proceedings and the amount of time devoted thereto," the amount of $8,000.00 is "a fair and reasonable fee" to be allowed for services rendered by John Hugh Williams as attorney for McClary. Whereupon "in the discretion of the court" he ordered these sums taxed as a part of the court costs.

From the foregoing order Jack E. Klass, administrator c.t.a. of the estate of Moore appealed to the Court of Appeals, which vacated the order. We allowed the petition of McClary and Williams for discretionary review.

*Williams, Willeford, Boger & Grady by Samuel F. Davis, Jr., and John Hugh Williams for petitioner appellant.*

*Jordan, Wright, Nichols, Caffrey & Hill by G. Marlin Evans and Walser, Brinkley, Walser & McGirt by Gaither S. Walser for respondent appellee.*

SHARP, Chief Justice.

The trial court awarded McClary both "court expenses" and attorney's fees. As to the $206.05 "court expenses," the Court of Appeals held that since nothing in the record or order of the superior court indicated the nature of these "court expenses," it was unable to review their validity. It therefore vacated the allowance of this item. This holding we affirm without the necessity of discussion.

The remaining and more substantial question is whether McClary is entitled under G.S. 6-21(2) to have Moore's estate taxed for the legal expenses incurred by McClary in his unsuccessful litigation to secure his appointment as executor. The Court of Appeals held that attorney's fees could not be awarded in a proceeding to contest the appointment of an executor because such proceeding is not one "to fix the rights and duties of parties" under the will. Its rationale was that respondent "cannot be said to be litigating the rights and duties of executor as a party under the will in the very proceeding in which he is seeking to become executor."

McClary bases his claim to attorney's fees on G.S. 6-21 which provides in pertinent part:

"Costs in the following matters shall be taxed against either party or apportioned among the parties in the discretion of the Court:

. . . .

"(2) Caveats to wills and any action or proceeding which may require the construction of any will or trust agreement, or *fix the* rights and duties of parties thereunder (emphasis added) . . . .

. . . .

"The word 'costs' as the same appears and is used in this section shall be construed to include reasonable attorneys' fees in such amounts as the court shall in its discretion determine and allow; . . . "

In view of the premise on which the Court of Appeals based its decision, we first consider the question, is a proceeding to determine whether a testator's nominee is disqualified to serve as his executor one to "fix the rights" of a party to the will? In

In re Moore

doing so we make reference to the following established principles:

[1] A testator has the right to name the person who shall administer his estate after his death, provided his designate is not disqualified by law. G.S. 28A-4-2 and G.S. 28A-9-1 (1976). *See In re Will of Johnson*, 233 N.C. 570, 574, 65 S.E. 2d 12, 15 (1951) ; 33 C.J.S. *Executors and Administrators* § 22a (1942). Similarly, the person he names as executor has the right to administer the estate, and he can be deprived of that right only by his refusal or neglect to probate the will or to take out letters, or by his inability or unsuitableness to execute the trust. 33 C.J.S., *supra* at § 22 d. *See Yount v. Yount*, 258 N.C. 236, 238, 128 S.E. 2d 613, 615 (1962). It is therefore the right of a person named in the will as executor to present the will for probate and to insist upon his appointment. In so doing he is presumably carrying out the expressed wish of the testator. However, the nominee is not required to assert his right under the will; the law authorizes any person named as executor in a duly probated will to renounce that office in the manner specified in G.S. 28A-5-1 (1976) (formerly G.S. 28-13 (1966) ).

[2, 3] A testator's selection of his executor is not to be set aside lightly. The decedent who names his executor has taken pains not to leave the selection of his personal representative to chance or to the choice of others; so we may suppose he had his reasons for the selection he made. However, statutory specifications of disqualifications for service as a personal representative cannot be superseded by the "broad general policy of the law which gives effect to the desires of a testator and sees that his intentions are carried out so far as they can be ascertained." *In re Russell's Estate*, 43 Cal. App. 2d 319, 324, 110 P. 2d 718, 721 (1941). For instance, when it appears that the personal interests of the prospective executor are so antagonistic to the interests of the estate and those entitled to its distribution that the same person cannot fairly represent both, the testator's nominee is unsuitable and disqualified as a matter of law. This is especially true where the conflict is one which the testator did not know or foresee. *See In re Keske's Estate*, 18 Wis. 2d 47, 117 N.W. 2d 575 (1962) ; *In re Stewart's Estate*, 139 Mont. 295, 363 P. 2d 161 (1961). Under such circumstances he should not be appointed, G.S. 28A-4-2 (1976) (formerly G.S. 28-8 (1966) ) ; and, when conditions arise after his appointment which will prevent him from faithfully and impartially execut-

ing the duties which he has assumed, cause for removal exists. G.S. 28A-9-1 (1976) (formerly G.S. 28-32 (1966)); *In re Will of Covington,* 252 N.C. 551, 114 S.E. 2d 261 (1960). Obviously the clerk should refuse to issue letters testamentary for the same cause he is empowered to revoke them. *In re Will of Gulley,* 186 N.C. 78, 118 S.E. 839 (1923).

**[4, 5]**   Since McClary, as the executor named in Moore's will is a person to whom the testator delegated duties thereunder, we hold that in a proceeding to determine his right to qualify as executor he is a *party* within the meaning of G.S. 6-21 (2). However, when an executor's right to qualify is contested and judicially denied, whether the court will exercise its discretion to award costs, including attorney's fees incurred in his unsuccessful litigation will depend in each case upon the grounds for the opposition and the reasonableness of his resistance to it, his good faith in pressing his appointment, and whether his efforts were in the interest of the estate. *See* 31 Am. Jur. 2d *Executors and Administrators* § 542 (1967). In a contest over the right of letters testamentary, as in a contest over letters of administration, if the contest is not in the interest of the estate generally, but only in the interest of the contestants, no allowance will be made out of an estate for costs and attorneys fees, incurred. *See* Annot., 90 A.L.R 101, 102 (1934); *Horton v. Horton,* 158 Md. 626, 149 A. 552 (1930).

In *In re Will of Slade,* 214 N.C. 361, 199 S.E. 290 (1938), the Court allowed costs and fees to heirs who had unsuccessfully caveated a will; in *Mariner v. Bateman,* 4 N.C. 350 (1816), to executors who unsuccessfully sought to resist the probate of a second will which deprived them of their office. However, in *Slade,* the Court found that the action of the caveators was "apt and proper" (214 N.C. at 362, 199 S.E. at 290); in *Mariner v. Bateman, supra,* the conduct of the complainants "was such as might reasonably have been expected from executors who were disposed to do their duty." 4 N.C. at 351. In both cases the contentions of the losing party were arguably correct; their efforts bona fide; and, if they had prevailed, presumably the result would have been to prevent the assets of the estate from being distributed contrary to the testator's intent. *See also Overman v. Lanier,* 157 N.C. 544, 549, 73 S.E. 192, 194 (1911).

In jurisdictions where the trial judges lack the discretionary, statutory authority granted to the trial judges of this State

by G.S. 6-21 (2) the clear weight of authority supports the following statement: "Where the costs and expenses with which it is sought to charge a decedent's estate were incurred in behalf of one whose claim to the appointment is rejected, either upon the original application or in proceedings for the revocation of his letters, it would seem clear that the estate cannot be charged with such costs and expenses." 90 A.L.R., *supra* at 110.

McClary contends that his efforts to qualify as executor were in the interest of the estate because the testator had manifested his desire that he be appointed. The peculiar facts of this case, however, neutralize this contention. The conflict between McClary's interests and those of the estate, which Mrs. Moore alleged and the court found to exist in 1974, was not present in October 1965 when Moore executed his will. The conflict arose out of a business transaction between Moore and Hayes in August 1973. At that time, according to Mrs. Moore's contentions, Moore lacked the mental capacity to contract and one of the first duties to devolve upon his personal representative would be to institute an action in behalf of the estate to rescind the contract of sale he made with Hayes. We think it is safe to say that, whatever his mental condition, Moore would have been the last person to anticipate that his executor would be called upon to bring an action on the ground of his mental incapacity to rescind a sale he had made. Moore, therefore, could not have been cognizant of the conflict of interest which the allegations of his lack of mental capacity would create for his named executor in 1973. Thus, it would be impossible to say that Moore intended McClary to serve as executor notwithstanding the conflict of interest which developed.

[5]    Albeit G.S. 6-21 (2) authorizes the trial judge in his discretion to award costs, including attorneys' fees, in the instances specified therein, it is quite clear (1) that he should not award costs and attorneys' fees to an executor-designate whose claim for appointment is rejected unless the claim was reasonable, made in good faith, and prima facie in the interest of the estate; and (2) that the judge has no discretion to tax costs against an estate when the nominated executor was disqualified to act as a matter of law. A designate who "has a private interest, whether direct or indirect, that might tend to hinder or be adverse to a fair and proper administration," is disqualified as a matter of law. G.S. 28A-9-1 (a) (4).

The facts pertinent to this controversy were found by the clerk and are set out in the preliminary statement herein. Judge Long concluded "as a matter of law that the facts found by the Clerk establish a conflict of interest which legally disqualifies Robert A. McClary from qualifying and serving as Executor. . . . " Upon McClary's appeal from the judgment of the superior court directing the clerk to appoint an administrator c.t.a. of Moore's estate, the Court of Appeals affirmed Judge Long's order. In an opinion by Judge Morris that court said:

"We fail to see how respondent can act impartially as executor when, as here, one of his first duties will be to decide whether to sue the president and chief executive officer of a firm, for which he has performed services as a certified public accountant for approximately 19 years. Especially when a decision to bring suit might endanger respondent's chances of future employment by the firm, the possibility that his decision to bring suit will be influenced by his own personal interests is great. One cannot represent his own interest and at the same time represent those of another which are in conflict with his own with fairness and impartiality to either. Even if respondent actually brings suit on behalf of the estate, his position would be such as to make him amenable to suggestions of failure to prosecute the action fully because of his relationship with Hayes. Construing the language of G.S. 28-32 broadly, we conclude that it is not necessary to show an actual conflict of interest to justify a refusal to issue letters of administration; it is sufficient that the likelihood of a conflict is shown." *In re Moore,* 25 N.C. App. 36, 40, 212 S.E. 2d 184, 187 (1975).

[6] We denied McClary's petition for discretionary review of the decision of the Court of Appeals on 6 May 1976. At that time its holding that McClary was legally disqualified to serve as executor of Moore's estate became the law of this case. We hold, therefore, that because of this legal disqualification he is not entitled to recover costs and attorney's fees in pressing his claim for appointment as executor under Moore's will. McClary did, however, perform one duty which he owed Moore's estate as the executor named in his 1965 will, and he is entitled to recover such costs, including *reasonable* attorney's fees, as can be allocated to that performance.

[7] When Mrs. Moore filed with the clerk her petition to probate the 1965 will and for an order disqualifying McClary

---

**In re Moore**

---

as executor, she made no reference therein to the existence of the "paperwriting dated August 15, 1973, purporting to be a will of the said James L. Moore." Notice of Mrs. Moore's petition having been served upon McClary by the sheriff, he very properly responded to it. In his response, as it was his duty to do under the circumstances, he notified the clerk he was informed and believed that Mrs. Moore had in her possession a subsequent paper writing executed in the year 1973 which purported to be Moore's last will. *See* G.S. 31-15 (1976). Since McClary knew of the existence of the 1973 instrument it is not unreasonable to assume that he also knew he was not the executor named therein. In his brief he says that he first responded to Mrs. Moore's petition by "calling to the court's attention a subsequent 1973 will which named the widow as Executrix and sole beneficiary."

Under these somewhat unusual circumstances McClary was entitled to the advice and assistance of counsel up to the time the 1965 instrument was probated as the last will of Moore. It follows that the court, in its discretion, could allow him to recover his necessary costs, including a reasonable fee for his attorney's services in responding to the petition which was served upon him on 19 February 1974 and in adverting the court to the existence of the 1973 paper writing. Services rendered by counsel after the probate of the 1965 will were rendered in the interest of McClary and not the estate. Accordingly, this cause is returned to the Court of Appeals for remand to the Superior Court of Cabarrus County so that the court may reconsider McClary's motion for reimbursement of costs expended, provided they are properly itemized, and for an allowance of reasonable attorney's fees.

[8] In view of Judge Collier's recital in the order which is the subject of this appeal, that he fixed $8,000.00 as "a fair and reasonable fee" for McClary's attorney "in view of the size of the estate with assets approximating $900,000, and the involved nature of the proceedings and amount of time devoted thereto," we are constrained to point out that the size of the estate bears no relation to the value of the services rendered in this proceeding. In the event reasonable attorney's fees are awarded McClary's counsel, the court will evaluate the services rendered prior to the probate of the 1965 will without reference to the value of the estate.

The decision of the Court of Appeals, in accordance with this opinion, is modified and affirmed.

Modified and affirmed.