577 A.2d 376

**Marian G. FIELDS**

v.

**Elaine B. MERSACK.**

**No. 1754, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

July 3, 1990.

Shari L. Boscolo (Allan G. Slan, on the brief), Kensington, for appellant.

Vincent L. Gingerich (Glenn E. Culpepper, Andrew J. Carafelli and Gingerich and Culpepper, on the brief), Silver Spring, for appellee.

Argued before BLOOM and ROBERT M. BELL, JJ., and JAMES S. GETTY, Judge of the Court of Special Appeals (Retired), Specially Assigned.

ROBERT M. BELL, Judge.

This appeal by Marian G. Fields, appellant, from the judgment of the Circuit Court for Montgomery County resolving several motions pertaining to payment of counsel fees incurred in defending a caveat proceeding, presents a single question:

> Whether, pursuant to a caveat proceeding, a finding of undue influence prohibits the personal representative from seeking and obtaining payment, directly from the estate, of necessary expenses previously approved by the court, such as costs and attorneys' fees, where it has not been found that the personal representative exercised or knew of such undue influence?

We will affirm; however, we reject the invitation by Elaine B. Mersack, appellee, to adopt a *per se* rule.

In order to understand fully the issue presented, it is necessary that we revisit, albeit briefly, the proceedings which were the subject of a prior appeal. *See Mersack v. Fields*, (unreported), No. 1399, September Term, 1988, filed May 2, 1989, *cert. denied*, 316 Md. 549, 560 A.2d 1118 (1989). The facts giving rise to that appeal were as follows. Melvin D. Fields, the decedent, died testate, following a lengthy illness, on December 31, 1985. Appellant, his wife, offered a will, dated December 27, 1985, naming her as personal representative and sole beneficiary, for probate. Subsequently, appellee, the decedent's daughter from a prior marriage, filed a petition to caveat the will, along with a will dated September 5, 1985 which named her personal representative and primary beneficiary.

Following trial, the sole issue presented to the jury for resolution was reflected in the following question: "Was the execution of the Last Will and Testament of Melvin D. Fields caused or procured by the undue influence of any person or persons?" The jury responded in the affirmative. Thereafter, appellant moved for judgment notwithstanding the verdict and the trial court granted that motion. It did so on the basis that a wife, unlike some other person, may be privileged to use a certain amount of influence on her husband. Thus, it observed:

A rather critical fact, it seems to me, when one evaluates this case, because when one looks at the kind of importuning that a wife might do or a husband, in the reverse situation, it seems to me quite proper, quite due, if you will, to influence, upon learning that one is excluded from a will, to say, "How could you do this? How could you not provide for me in my old age after all we have been through together?"

Appellee successfully appealed to this Court. In explaining our rationale for reversing and ordering of reinstatement of the jury's verdict, we pointed out that a wife's importuning of a husband, while perhaps more understandable and less blameworthy, was no less importuning and affected whether the will expressed the decedent's will or

that of his wife. Since, we said, the jury properly and reasonably could have reached the conclusion it did, the court erred in granting judgment.

Following that decision, appellant filed several petitions with respect to the estate: (1) Petition for allowance for counsel fees (defending a specific action); (2) Petition for allowance of counsel fees; and (3) Motion for Leave to File Seventh and Final Administrative Accounting. Appellee, in turn, filed motions pertaining to payment of counsel fees out of the estate. She filed a Motion to Modify the Order Allowing Counsel Fees in Lieu of Personal Representative's commission and a Motion to Strike and Set Aside Order of Court entered May 22, 1987.[1] Appellant had previously filed a Petition for Allowance of Counsel Fees in Lieu of Personal Representative's Commission and a Petition for Expenses of Estate Litigation.[2]

---

1. This motion was directed at appellant's Petition for Allowance of Distribution to Spouse, filed March 24, 1987, after the caveat proceedings were initiated. That petition was granted by order, dated May 22, 1987, authorizing appellant "to pay unto herself from the assets of the estate, the sum of $34,189.35 as a distribution for her support during the pendency of the caveat proceeding." It is not at all clear that the court's ruling on appellee's motion to modify is before us; by its terms the petition does not relate to counsel fees or other expenses of litigation.

    Maryland Estates & Tr.Code Ann. § 7–502(b) provides:
    (b) *Finality of order.*—Unless there was fraud, material mistake, or substantial irregularity in the proceeding, or a request for a hearing is filed within 20 days of the sending of the notice, any action taken by the court on the petition is final and binding on all persons to whom the notice was given.

    Appellee alleged in her motion to modify and in the lower court that she did not receive notice of the petition and, indeed, that the petition "did not contain a certificate of service or any indication that [appellee] had received notice of the filing of the Petition or the submission of the order to Court." The court did not make any findings in that regard. Nevertheless, and notwithstanding its statement that the matter was not before it, the court granted appellee's motion to modify. As can be seen by reference to the issue presented, appellant does not challenge, at least, directly, that ruling.

2. When the caveat petition was filed, appellant filed, and the court granted, a Petition for Authority to Retain Counsel to represent the

By order dated October 19, 1989, the trial court denied the appellant's motions and granted appellee's.[3] Moreover, pursuant to Maryland Rule 2–602(b), it certified those rulings for immediate appeal and directed the clerk to enter final judgment.

Appellant, as we have seen, has prosecuted this appeal.[4]

Maryland Estates and Trust Code Ann. § 7–603 provides:

When a Personal Representative or person nominated as Personal Representative defends or prosecutes a proceeding in good faith and with just cause, he shall be entitled to receive his necessary expenses and disbursements

---

estate in the caveat proceedings. Appellant concedes that such a petition was not required under the Estates and Trust Article.

**3.** The court allowed $1200.00 in counsel fees to appellant in respect of the administration of the estate. It was allowed pursuant to the court's ruling on appellee's motion to modify. The allowance of that fee is not an issue on appeal.

**4.** Appellant raised, in her reply brief, the issue of this Court's jurisdiction to entertain some of the issues on this appeal. She asserted that it is now too late for appellee to challenge orders, already approved, authorizing the payment of counsel fees. The matter is of some concern. Some of the petitions were filed prior to the resolution of the caveat proceeding. One of those petitions, the one for allowance of counsel fees in lieu of personal representative commissions, filed April 26, 1988, sought authorization to pay out of the assets of the estate counsel fees in the amount of $5,737.21. Appellee responded, contesting that petition, on May 4, 1988. The order authorizing the payment of the fees was signed August 30, 1988. Appellee did not appeal that order. We think that, as to that order, appellant is correct—appellee's motion for modification, *see* Maryland Rules 2–534 and 2–535, and her appeal, is too late. *See* Maryland Estates & Tr.Code Ann. § 7–502(b).

In her brief, appellant states that the fees that are the subject of the other petitions she filed were also paid out of the assets of the estate. However that may be, that is not reflected in any accounting filed with the court, with the exception of appellant's proposed final accounting and that accounting was not accepted by the court. Moreover, a hearing was not held with respect to those petitions until September 19, 1989 and the order resolving them was not signed until October 19, 1989. It is from that order that this appeal has been taken. It follows then that if payments have been made out of the estate, appellant was not authorized to make them.

from the estate regardless of the outcome of the proceeding.

The plain language of the statute makes clear, and the parties agree, that a personal representative may not receive "necessary expenses and disbursements from the estate" unless he or she "defends or prosecutes a proceeding in good faith and with just cause."

■ Appellant maintains that, in order to find that she defended the will in bad faith, the court was required to conduct an independent evidentiary hearing. This was so, she continues, because the question presented to the jury did not expressly identify her, or anyone else, for that matter, as the person who exerted the undue influence over the decedent. Thus, she concludes, without an evidentiary hearing, there was no factual predicate for the court's finding of bad faith and, consequently, the court erred.

The main thrust of appellant's argument is that the jury did not find, and, therefore, there has never been a finding, by the court or anyone else, that *she* perpetrated the undue influence on the decedent. Appellee's rejoinder is that the lower court did, in fact, find that appellant was the perpetrator of the undue influence and that, as a matter of law, a personal representative found guilty of exercising undue influence is precluded from receiving payment of counsel fees and costs out of the estate. In appellee's view, then, an evidentiary hearing to determine the existence of appellant's bad faith was not required.

The contention that the jury did not find that it was appellant who exerted undue influence on the decedent is totally without merit. In the prior appeal, the issue presented was whether the trial judge erred in granting appellant's motion for judgment. To answer that question, this Court was required to review the factual context in which the case was presented to the jury and to assess the jury's finding in light of those facts. When we did so, we found, and so recounted, that those facts pertaining to the appellant's actions bore on the issue of undue influence.

The only evidence concerning the possible involvement of anyone else was a letter, apparently introduced by appellee, in which the decedent wrote to appellee,

"Tell Jack to keep the will confidential. Fred, Marian's brother-in-law, is probing me to make a will to include Marian. It is a touchy situation with all the other problems."

Other than that evidence, the Court's only focus was upon the relationship between the decedent and appellant and the circumstances surrounding the execution of the final Will, the one favoring appellant. The Court concluded:

we are unable to agree with the conclusion of the trial court that there was no evidence legally sufficient to support an inference that the will was procured by undue influence. The will was made by a man who was suffering from a grave and exhausting disease and unable to care for himself. It was contrary to the intentions he had repeatedly expressed until his wife confronted him with his recently executed will that left her nothing. A jury could reasonably infer that he was afraid of alienating his primary caretaker and was unable to withstand *her importunities* to change his will. (Emphasis supplied)

Slip op. at 10.

Moreover, in granting the motion for judgment n.o.v., the trial court, itself, acknowledged that appellant was the subject of the undue influence allegations. As indicated earlier, the gist of that ruling was that it is different when a wife importunes her husband than when someone else importunes him. Indeed, the trial court considered the fact that the wife did the importuning to be "a rather critical fact". *See* slip op. at 10–11.

In light of the very clear facts indicating that appellant was, at all times, the object of the allegation of undue influence and that the jury's verdict was premised upon evidence tending to support those allegations, we are satisfied that an independent evidentiary hearing for the pur-

pose of establishing "who unduly influenced the decedent" was not necessary.

Implicit in appellant's position is that a jury finding of undue influence does not preclude, as a matter of law, payment of a personal representative's expenses out of the estate. Appellee's position is explicit in its assertion that such a finding does preclude, as a matter of law, payment of such expenses from the estate. No Maryland court has had an occasion to address this point. Thus, we seek guidance as to it from out-of-state cases which have.

Appellant relies upon *In re Taylor's Estate*, 54 Tenn.App. 173, 388 S.W.2d 657 (1963). The appellant was the executrix under a will, which disinherited the decedent's two daughters and, instead, bequeathed all of her property, with the exception of $1,000, which was bequeathed to the appellant, to a church, of which the appellant was the minister and guiding influence. That will having been contested and, following a jury trial, set aside, the appellant filed a final settlement and accounting. In that final accounting, she claimed expenses relating to the will contest litigation. The lower court sustained the challenge to those expenses, filed by decedent's daughters, reasoning that "since the will was set aside on the grounds of undue influence practiced by [the executrix] upon [the decedent] ... she was not entitled to credit for expenses of litigation...." 388 S.W.2d at 659.

The Tennessee Court of Appeals reversed. First, the Court held that the case fell within the exception enunciated in *Smith v. Haire*, 133 Tenn. 343, 181 S.W. 161 (1915). In that case, the Supreme Court of Tennesee stated:

We do not mean to say that we will disallow such costs and attorney's fees in every case wherein a will may be set aside on the ground of fraud and undue influence, even though the executor or executrix may be the sole beneficiary. A case may arise in which the jury would find fraud and undue influence with enough evidence to require an approval of such a verdict by the court, and

yet there might be in such a case circumstances that would justify the attempted probate of the will in good faith.

388 S.W.2d at 660, quoting *Smith*, 181 S.W. at 162– 63. The Court explained, in that regard, that an executrix's "good faith was a question of fact which had to be determined upon the record in the trial below." *Id.* at 663. It concluded, upon its *de novo* trial of the issue, *id.*, that, although "the evidence required this court to approve the verdict of the jury finding undue influence on the part of the executrix ...[,] we find that all the surrounding circumstances justified [the executrix] in offering the will for probate and in making every reasonable effort to sustain the validity of the will." 388 S.W.2d at 664.[5]

The other side of the issue is represented by *Matter of Estate of Pfleghar*, 35 Wash.App. 844, 670 P.2d 677 (1983). In that case, the executrix and principal beneficiary under a will appealed from a judgment invalidating that will. The court invalidated the will on the ground that it had been procured by the undue influence of the executrix on the decedent. The court allowed executrix and attorney's fees to be paid by the estate. The cross-appeal challenged that ruling. The Court of Appeals affirmed the undue influence finding, but reversed the allowance of executrix and attorney's fees. It framed the issue in a manner virtually identical to the issue presented here: "whether one who is named executrix and sole beneficiary in a will which is set aside for undue influence exercised by that person on the

---

5. Appellee characterizes Taylor as standing "for the proposition that when it is found that a Will has been procured by undue influence for the benefit of a third party, and the executrix is not the sole or primary beneficiary, the court may allow expenses to be paid out of the estate." We are not persuaded by that characterization. As indicated, in *Taylor*, the executrix was not only the pastor of the primary beneficiary, but its "driving influence". In any event, such a distinction is one without substance. Under any view, the executrix in *Taylor* participated in the undue influence. That alone, as we will see, *see infra*, would suffice to disqualify her, under the *per se* rule advocated by appellee.

testator should recover costs and attorney's fees from the estate." 670 P.2d at 678.

Answering the question, the Court opined:

The sole test in determining whether an executor is entitled to recover his costs out of the estate is: "Did the deposed executor act in good faith?" ... The court in making its determination as to good faith looks to its findings and conclusions in the will contest. (citations omitted),

670 P.2d at 680. The Court then quoted with approval, from *In re Jones Estate,* 135 P. 293, 295, 135 P. 293 (1913):

... The test of the executor's right to have the costs of his unsuccessful attempt to prevent revocation of probate paid out of the estate is whether he has acted in good faith ... It cannot be said that one exercises good faith in seeking to establish a will which he himself has, by fraud or undue influence, caused to be executed.... (citations omitted, emphasis omitted)

*Id.* The Court concluded that a finding of "undue influence perpetrated by an executor and sole beneficiary in a will contest imports a finding of bad faith." *Id.* Other out-of-state cases reaching a consistent result are, *e.g., In re Jenkin's Estate,* 245 Iowa 939, 65 N.W.2d 92, 93 (1954); *In re Limberg's Estate,* 60 N.Y.S.2d 669, 671 (1945); *In re Randall's Estate,* 64 Idaho 629, 132 P.2d 763, 765 (1942); *In re Graham's Estate,* 156 Fla. 421, 23 So.2d 485, 488–89 (1945).

The fundamental difference between these lines of cases is that, in the latter, a *per se* rule is enunciated, while in the former a discretionary rule is explicated. We are persuaded that the discretionary rule is the better rule.

As recognized in the prior appeal, it is not the purpose of the caveat proceeding to assess blame or to determine who should or should not benefit from the will. Rather, it is to determine if the will expresses the decedent's testamentary intent or is simply the product of importunities he or she could not resist. On the other hand, it is a factual question

whether a personal representative has acted in good faith and with just cause in defending or prosecuting a caveat proceeding. Because that issue is neither presented to nor decided by the jury in a caveat proceeding, that factual determination must be made by the the trial judge, to whom the issue of the source of the payment of the attorney's fees is presented.

A *per se* rule does not take account of the purpose of the caveat proceeding; it simply requires a trial court reviewing a petition for counsel fees by a personal representative found to have exerted undue influence upon the decedent to infer from the caveat proceeding findings that were not made in those proceedings and, indeed, were not required to be made. Moreover, the rule fails to recognize that a jury finding, on credibility grounds, in favor of one of the parties, does not negate the existence of circumstances that would justify a finding that the defense or prosecution of the proceedings was, nevertheless, undertaken in good faith. In other words, a jury finding of undue influence does not necessarily answer the question whether the personal representative proceeded in good faith and with just cause. The dissenting opinion in *Pfleghar* placed the matter in perspective:

> When the trial court exercises its discretion in awarding executor and attorney's fees, the sole test is whether the executor acted in good faith in defending the will.... This is a factual determination to be made after weighing the evidence and considering the totality of the circumstances. The determination that the executor exerted undue influence is one factor, but not the controlling factor, in determining whether the will was defended in good faith.

670 P.2d at 682. We agree.

Ordinarily, then, a trial judge presented with a petition for costs and attorney's fees filed by a personal representative, whom a jury has found has exerted undue influence on the decedent, must determine, nevertheless, whether the personal representative acted in good faith and with just

cause in defending the will. That determination must be made in light of the totality of the circumstances, including the jury's finding, and by weighing all the evidence. The trial judge may not import bad faith from the jury's finding alone.

In the case *sub judice,* the trial judge admittedly relied upon *Pfleghar,* which espouses a *per se* rule. Having read the dissent, however, the court said:

> The Court is inclined to say that even if it were not a per se rule, that from a discretionary standpoint I am still saddled with the finding that was made in this case by the jury that in fact there was undue influence, and I assume that the only basis for the undue influence were actions primarily, if not exclusively, taken by Mrs. Fields, not by her brother, but to the great extent it is clear beyond any argument that she was the party responsible.

> I would find as a matter of discretion, faced as I am with the jury's factual determination, that in fact there was bad faith, or at least an absence of the good faith required under Rule 7–603.

We do not interpret that ruling as merely a reiteration of its reliance on the *per se* rule. We interpret its reference to being bound by the jury's factual finding as simply a recognition that it must determine appellant's good or bad faith in light of that finding, not the finding it would have made. By that ruling, therefore, the court provided an alternative basis for its decision, one based on discretion. Accordingly, we may, and do, affirm the judgment on that basis. In doing so, we do not mean to suggest that a finding of bad faith may always follow from a finding of undue influence.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.