872 A.2d 58

**PIPER RUDNICK LLP, et al.**

**v.**

**Carol HARTZ, et al.**

**No. 84, Sept. Term, 2004.**

Court of Appeals of Maryland.

April 8, 2005.

202

204

Shale D. Stiller (James D. Mathias and Evelyn W. Pasquier of Piper Rudnick LLP, on brief), Baltimore, for appellants.

Steven F. Wrobel (Gerard P. Martin and Andrew H. Baida of Rosenberg, Martin, Funk, Greenberg, LLP, on brief), Baltimore, for appellees.

Argued before BELL, C.J., RAKER, WILNER, HARRELL, BATTAGLIA, GREENE and RAYMOND G. THIEME, JR., (Retired, specially assigned), JJ.

RAKER, J.

This is the latest chapter in the dispute between the late Sigmund Stanley Hartz's beneficiaries and his personal representative. Previously, the personal representative successfully defended against the beneficiaries' attempt to remove and surcharge him. In this case, we must decide, pursuant to Md.Code (1974, 2001 Repl.Vol., 2004 Cum.Supp.), § 7–603 of the Estates and Trusts Article,[1] whether the personal representative is entitled to pay counsel fees incurred in that defense from the corpus of the estate. We shall answer this question affirmatively and reverse.

## I.

Appellants Brian Goldman, personal representative of the estate of Sigmund Stanley Hartz, and Piper Rudnick LLP,[2] counsel to Goldman, appeal the denial of their petition for attorney's fees by the Orphans' Court for Frederick County. Appellees Carol Hartz, Barbara Hartz Habermann, and Benjamin Hartz ("the beneficiaries") are Mr. Hartz's children and beneficiaries of his will.

Sigmund Stanley Hartz died on April 22, 1996, leaving an estate of approximately $4,456,783. Hartz's will named as beneficiaries his children and his wife, Natalie Hartz.[3] The major assets of the estate were: (1) a one-third interest in the common stock of Hartz & Company, Inc. ("Company"), amounting to a one-half interest in the voting stock; and (2) a

---

1. Unless otherwise indicated, all subsequent statutory references shall be to the Estates and Trusts Article of the Md.Code (1974, 2001 Repl.Vol., 2004 Cum.Supp.).

2. Piper Rudnick LLP currently is known as DLA Piper Rudnick Gray Cary U.S. LLP.

3. Natalie Hartz died on April 7, 2002.

one-half interest in the Hughes Ford General Partnership ("Partnership").

Hartz's will named Brian Goldman as his personal representative. Goldman served as Hartz's personal attorney for twenty-five years. In addition, Goldman served as counsel to the Company, Partnership, and Abraham Cohen, Hartz's business partner. In naming Goldman as his personal representative, Hartz was aware that Cohen also had named Goldman as his personal representative. Hartz expressly waived any potential conflicts of interest that could arise from Goldman's representation of his estate, Cohen's estate, the Company, and the Partnership. The will granted to Goldman, as fiduciary, the power to appoint attorneys without court approval. Section 7.1 of the will provided as follows:

"I hereby grant to my Fiduciaries ... the following powers, without the need to apply for or obtain any order, ratification or approval of any court, for the exercise thereof, in addition to those conferred by common law, statute, or rule of court: ... To appoint agents to act on behalf of my Fiduciaries, including, without limitation, attorneys, accountants and investment counsel, and to delegate discretionary power to such agents."

Following Hartz's death, Goldman functioned as personal representative of Hartz's estate. Goldman regularly wrote to the beneficiaries about the estate's assets and liabilities. Between Hartz's death and July 1999, Goldman filed six administration accounts, three inventories, and a number of petitions for attorney's fees in the Orphans' Court for Frederick County. The beneficiaries did not file exceptions to any of these documents.

By August 1999, the relationship between Goldman and the beneficiaries had become acrimonious. The beneficiaries were critical of Goldman's role in the estate's efforts to enforce a Stockholder's Agreement, which stipulated that the Company would repurchase Hartz's stock. After a dispute developed between the Company and Hartz's estate, one of the Company's attorneys expressed his concern over Goldman's conflict

of interest. In response, in June 1996, Goldman notified the beneficiaries that he would not represent the estate in the stock repurchase negotiations. The beneficiaries did not object, and they requested that the estate retain Alan Sachs to represent the estate in the negotiations. Over the next three years, Sachs negotiated interim and final stock redemption agreements with the Company.

The beneficiaries' recriminations against Goldman arose from his efforts as the Company and Cohen's attorney to transfer ownership of Cohen's life insurance policy from the Company to an insurance trust. This transfer was necessary to avoid adverse tax consequences. Since 1991, Hartz and Cohen had been aware that the survivor would have to restructure his life insurance policy to avoid these consequences. Goldman executed the insurance trust on April 12, 1999, one month after Sachs executed the final stock redemption agreement. Sachs and the beneficiaries accused Goldman of harming the estate by not informing Sachs of the plan to create the trust and the priority of paying beneficiaries under the trust's terms. According to Sachs and the Hartz beneficiaries, the trust harmed Hartz's estate by, among other things, placing the estate at the bottom of the distribution list for Cohen's life insurance. Goldman asserted that he was precluded by attorney-client privilege from informing Sachs and the beneficiaries of his plans.

The other source of acrimony was the estate's Partnership assets. Goldman urged Cohen to exercise his option to purchase the estate's Partnership interest. Cohen ultimately defaulted on this option, because he could not negotiate a suitable financing agreement. In addition, Goldman repeatedly pressured the Company to pay rent, back rent, and interest it owed the Hartz estate. With Goldman's consent, Sachs negotiated with the Company to pay the back rent. Later, these negotiations expanded to include an offer by the Company to purchase the estate's interest in the Partnership. On September 23, 1999, Sachs informed Goldman that the beneficiaries did not want Goldman to participate in the negotiations.

The growing rancor culminated in a showdown before the Orphans' Court. On November 22, 1999, Goldman filed a seventh administration account and a petition for termination of the estate and discharge from liability. The beneficiaries filed exceptions to Goldman's petition, requesting, *inter alia,* that the court deny the petition to close the estate, remove Goldman as personal representative, appoint Carol Hartz in his stead, and surcharge Goldman and/or his law firm for damages caused by his alleged breach of his fiduciary duty. Specifically, the beneficiaries requested that Goldman and his firm be surcharged the amount of their fees from March 1 to October 31, 1999. In support of their exceptions, the beneficiaries cited concerns involving the Partnership.

The Orphans' Court held a hearing on March 13, 2000 and issued an order on March 15, 2000. The court ordered Goldman removed as personal representative, disapproved his seventh accounting, and denied his petition for termination of the estate and discharge of liability. At the same time, the court appointed Goldman special administrator and granted his petition for allowance of interim counsel fees.

Goldman appealed to the Circuit Court for Frederick County, and the beneficiaries cross-appealed from the denial of the surcharge petition. The Circuit Court found that Hartz was aware when he named Goldman personal representative that there were possible conflicts of interest. The court stated, however, that the level of conflicts eventually "rose to a level that Hartz could not have reasonably contemplated or foreseen" and "rose to a point where Goldman could not function effectively as Personal Representative for the Estate." Accordingly, the court ordered Goldman removed as personal representative.

The Circuit Court held a hearing to consider the beneficiaries' request that Goldman and his firm be surcharged. The court denied the surcharge request, because: (1) the Orphans' Court had approved the fee petitions, indicating that it had found that Goldman's actions were "for the benefit of the estate," and (2) Goldman's conflict of interest did not consti-

tute bad faith or gross negligence. The court removed Goldman as special administrator and named Carol Hartz as personal representative of the estate.

Goldman appealed his removal to the Court of Special Appeals, and the beneficiaries cross-appealed, challenging the denial of the surcharge request. On July 28, 2003, in an unreported opinion (*"Goldman I "*), the Court of Special Appeals held that removal of Goldman "was neither necessary nor appropriate because the record before us indicates that the estate was ready to be closed."

The Court of Special Appeals affirmed the denial of the surcharge request, agreeing with the Circuit Court that Goldman had not acted in bad faith or gross negligence. The court based this holding on two factors. First, it stated, "We discern no facts recounted, and no findings made, that remotely suggest bad faith on the part of Goldman." Second, the court concluded that the beneficiaries failed "to show any measurable damages caused either by Goldman's personal profit from the conflicts of interest or monetary loss to the estate." The beneficiaries appealed, and we denied their petition for a Writ of Certiorari on December 16, 2003. 378 Md. 615, 837 A.2d 926 (2003).

In August 1999, faced with the beneficiaries' hostility, Goldman retained Piper Rudnick. On November 30, 2001, Piper Rudnick filed a petition for its fees in the Orphans' Court pursuant to § 7–602. Goldman signed the petition and, paraphrasing § 7–603, asserted that he was "entitled to receive his necessary expenses and disbursements from the Estate, including attorneys fees." This fee petition covered Piper Rudnick's work from August 1999 until June 2001, when the Circuit Court issued its opinion.[4] The fees amounted to

---

4. Piper Rudnick's fees accrued after June 4, 2001 are not before us. Piper Rudnick and Goldman have petitioned the Orphans' Court for fees incurred from June 5, 2001 through December 16, 2003. Those fees, amounting to $398,000, relate to Piper Rudnick's work on the appeals to the Court of Special Appeals. The dates covered represent

$589,441.28, based on attorney and paralegal fees of $568,914.00 and expenses of $20,527.28. According to Piper Rudnick, "[o]ver 95%" of the fees were incurred in the firm's "preparation for and trial of the case" in the Circuit Court.

Carol Hartz opposed the fee petition.[5] The Orphans' Court held a hearing and denied the fee petition. The court stated as follows:

"The check and balance of the Orphans' Court is that we're in total agreement that any person in any matter may hire any attorney. Check and balance has always been in the Orphans' Court since time immemorial, is that the court decides how much that attorney that has been hired gets paid. It is a fair check and balance.

"The court, in reviewing this matter, also noted that there are no prior attorney fees petitions filed by [Piper Rudnick and Goldman] prior to the one before the court at this point.

---

the day after the Circuit Court's order was issued and the day we denied the beneficiaries' petition for Writ of Certiorari in *Goldman I.*

5. In the period after Piper Rudnick filed its fee petition, the Orphans' Court repeatedly approved attorney's fees for the attorneys the beneficiaries hired to oppose Goldman's appeals. On January 8, 2002, Carol Hartz, acting as successor personal representative, petitioned the Orphans' Court, noting that Martin, Snyder & Bernstein, P.A. had represented the beneficiaries in opposing Goldman's appeal of his removal and requesting authorization for the firm to continue in that capacity. The Orphans' Court granted the petition on January 9. On April 25, 2002, November 13, 2002, May 5, 2003, and October 28, 2003, Carol Hartz petitioned the Orphans' Court for allowance of interim attorney's fees for Martin, Snyder & Bernstein, P.A. The petitions covered the firm's work opposing Goldman's appeals of his removal and Piper Rudnick and Goldman's fee petition from November 1, 2001 through March 31, 2002, April 1, 2002 through September 30, 2002, October 1, 2002 through March 31, 2003, and April 1, 2003 through October 21, 2003, respectively. In each of these petitions, Hartz described the firm's services as "for the benefit of the Estate." On April 29, 2002, November 20, 2002, May 7, 2003, and October 29, 2003, respectively, the Orphans' Court ordered Martin, Snyder & Bernstein, P.A. paid a total of $163,702 in fees and reimbursed a total of $3,773.97. In addition, on October 25, 2001, Alan Sachs petitioned the court for allowance of his fees in his work opposing Goldman's appeal in the Circuit Court from May 1, 2000 through October 23, 2000. On October 29, 2001, the Orphans' Court authorized the payment of $16,000 from the estate to Sachs.

"Now, in reviewing the matters, defense argued before the court as to whether or not something is—has a right to appeal, the court does not question anyone's right to appeal. And it was argued, both sides, very well, that one—and the court has been faced with the many times; people will not even want to serve as personal representative if, in fact, they are (inaudible) by hostile legatees or hostile family members who want them removed just for the mere pleasure of removing them.

"Also argued well by [Piper Rudnick and Goldman] is that a hostile personal representative is certainly a breach—or hurt the estate by expenditures of money, thinking that they are right. And I think each case is, of course, obviously, judged on its merit. In that respect, the court has decided that the position for allowances for attorney fees in this matter are hereby denied."

Piper Rudnick and Goldman appealed the Orphans' Court's denial of Piper Rudnick's fees directly to the Court of Special Appeals, pursuant to Md.Code (1973, 2002 Repl.Vol., 2004 Cum.Supp.), § 12–501(a) of the Courts and Judicial Proceedings Article (permitting a party to appeal to the Court of Special Appeals from a final judgment by an orphans' court). On September 30, 2003, the Court of Special Appeals, in an unreported opinion (*"Goldman II "*), held that in order for an orphans' court to decide whether to approve fees incurred by the personal representative in prosecuting or defending proceedings, the orphans' court must first determine whether the litigation was "for the protection or benefit of the estate." Next, the orphans' court must determine whether the prosecution or defense was "in good faith and with just cause." Concluding that the Orphans' Court had not considered whether Goldman's defense of the beneficiaries' attempts to remove him met the first prong of this test, the Court of Special Appeals vacated the order and remanded the matter.

On January 7, 2004, the Court of Special Appeals denied Piper Rudnick and Goldman's Motion for Reconsideration and Reargument. The court, in relevant part, ordered as follows:

"ORDERED, in keeping with the opinion of this Court, that the Orphans' Court for Frederick County shall convene a hearing at which counsel for the parties may be heard and present evidence on the question of whether the litigation expenses and fees at issue 'were for the protection or benefit of the estate' of Sigmund Hartz. It is further

"ORDERED that when the Orphans' Court has decided this issue, either party aggrieved by that order may seek appropriate relief in conformity with applicable Maryland rules of civil procedure."

The Orphans' Court held a hearing on March 24, 2004. At the hearing, Goldman testified that the "benefit to the estate" was his adherence to Hartz's testamentary intent for Goldman to serve as his personal representative. The court responded as follows:

"Yeah, but your arguments don't hold because of those— well, we're not going to get into that because the question I asked, you have answered. And I think you're correct in saying that the wishes of the testator, I think you're 100 percent correct. And I think, just as a comment from the bench, that you have a responsibility, a fiduciary role to protect the assets so that distribution and awards can be made, I think that you have that responsibility as well."

The Orphans' Court denied the petition of Piper Rudnick, stating that "this Court has determined that the litigation expenses incurred were *not* for the protection or benefit of the Estate."

Piper Rudnick and Goldman noted a timely appeal to the Court of Special Appeals. Before that court considered the issues, we granted certiorari on our own initiative. 383 Md. 256, 858 A.2d 1017 (2004).

## II.

The Court of Special Appeals held in *Goldman II* that § 7–603 applies only when the personal representative's defense or prosecution of a proceeding is "for the protection or benefit of

the estate." [6] On remand, the Orphans' Court applied the test set out by the Court of Special Appeal and did not authorize Goldman to pay Piper Rudnick's fees from the estate.

Before this Court, Piper Rudnick and Goldman make two arguments. First, they maintain that there is no requirement that the defense be "for the protection or benefit of the estate." Instead, according to Piper Rudnick and Goldman, § 7–603 entitles a personal representative to reimbursement as long as the personal representative defends a proceeding "in good faith and with just cause." In addition, Piper Rudnick and Goldman advocate a *per se* rule that a personal representative's successful defense of a removal and surcharge petition meets the requirements of § 7–603.

In the alternative, Piper Rudnick and Goldman argue that Goldman's defense benefitted the estate. They advocate a similar *per se* rule that legal fees incurred in a successful defense against an attempted removal of a fiduciary when the personal representative was not found to have done anything wrong are incurred for the benefit of the estate. The benefit in such situations is that the personal representative has fulfilled the testator's intent to have him or her serve as the personal representative. According to Piper Rudnick and Goldman, a contrary result would encourage many personal representatives to resign whenever a beneficiary files a petition to remove, because personal representatives would not risk financial responsibility for defending the suit.

The beneficiaries argue that the Orphans' Court did not abuse its discretion in denying Piper Rudnick's fee and that the court should be affirmed. They assert that the Orphans'

---

6. The court relied upon § 7–401(y), which provides, in relevant part, that the personal representative "may prosecute, defend, or submit to arbitration actions, claims, or proceedings in any appropriate jurisdiction *for the protection or benefit of the estate.*" (emphasis added). The Court of Special Appeals drew further support from § 15–102(p). Section 15–102 details the powers of fiduciaries. Subsection 15–102(p) states, "Except as provided in the Maryland Rules, he may prosecute, defend, or submit to arbitration any actions, claims, or proceedings in any jurisdiction for the protection of the fiduciary estate."

Court has the authority to award attorney fees that are "fair and reasonable in light of all the circumstances to be considered," § 7–602(b), including fees incurred by the personal representative who prosecutes or defends a proceeding "in good faith and with just cause," § 7–603, *provided* that the personal representative engaged in such action "for the protection or benefit of the estate." § 7–401(y).

The beneficiaries reject Piper Rudnick and Goldman's *per se* benefit to the estate rule and argue that an orphans' court's decision about whether to allow counsel fees is discretionary. They contend that the Orphans' Court did not abuse its discretion in holding that Goldman's decision to appeal his removal did not benefit the estate. To support their contention, the beneficiaries makes two arguments. First, Goldman's success in appealing his removal does not exonerate him from wrongdoing. Goldman had conflicts of interest that the testator could not have contemplated. Second, Goldman's decisions resulted in the large attorney's fees. Specifically, the beneficiaries fault Goldman for: (1) not seeking the Orphans' Court's approval prior to hiring Piper Rudnick; (2) not resigning, when he had noted that terminating the estate was in the estate's best interest and when he offered to resign in return for a release from the beneficiaries' claims against him; and (3) appealing to the Circuit Court for an extensive *de novo* trial, rather than appealing directly to the Court of Special Appeals.

An orphans' court is a tribunal of special limited jurisdiction and can exercise only the authority and power expressly provided to it by law. *See* § 2–102(a); *Radcliff v. Vance*, 360 Md. 277, 286, 757 A.2d 812, 816 (2000); *Mudge v. Mudge*, 155 Md. 1, 3, 141 A. 396, 397 (1928). As such, an orphans' court has the power to direct the allowance of counsel fees out of the estate only when authorized by statute. *Clark v. Rolfe*, 279 Md. 301, 305, 368 A.2d 463, 466 (1977); *Lusby v. Nethken*, 262 Md. 584, 585, 278 A.2d 552, 553 (1971); *Mudge*, 155 Md. at 3, 141 A. at 397. An orphans' court must exercise sound judgment and discretion in determining whether to

award counsel fees. *Wolfe v. Turner,* 267 Md. 646, 653, 299 A.2d 106, 109 (1973); *Lusby,* 262 Md. at 586, 278 A.2d at 553.

## III.

Two statutes authorize the orphans' court to allow attorney's fees from the estate: §§ 7–602 and 7–603.[7] At issue in this case is § 7–603, which provides as follows:

"When a personal representative or person nominated as personal representative defends or prosecutes a proceeding in good faith and with just cause, he shall be entitled to receive his necessary expenses and disbursements from the estate regardless of the outcome of the proceeding."

We first consider whether a "for the protection or benefit of the estate" rule is a separate requirement under § 7–603.[8] We conclude that § 7–603 requires only that the personal representative acted "in good faith and with just cause." We hold that Goldman was entitled to receive Piper Rudnick's fees from Hartz's estate.

We first address Piper Rudnick's argument that § 7–603 does not contain a "benefit to the estate" requirement. We agree with Piper Rudnick that there is no statutory *independent* or *separate* requirement contained within § 7–603 that the personal representative benefit the estate. Our conclusion

---

7. As the courts below ruled based on § 7–603, we first consider whether Goldman met the requirements of § 7–603. Since we conclude that Goldman is entitled to receive his expenses and disbursements from the estate, we need not consider whether Piper Rudnick should have been reimbursed under § 7–602.

8. Although Piper Rudnick and Goldman did not appeal the Court of Special Appeal's decision articulating this test, it is necessary for us to consider the validity of the test in our review of its application by the Orphans' Court. *See Loveday v. State,* 296 Md. 226, 234, 462 A.2d 58, 61–62 (1983) (holding that the failure of a party to petition for review of the Court of Special Appeals's first judgment does not preclude this Court, upon granting a Writ of Certiorari from the Court of Special Appeals's second judgment, from reviewing the entire record and making any order we deem appropriate consistent with the Maryland Rules).

is based upon the plain language of § 7–603, as well as the legislative history of § 7–603 and the case law of this Court.

A.

 The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature. *Comptroller v. Phillips,* 384 Md. 583, 591, 865 A.2d 590, 594 (2005); *Collins v. State,* 383 Md. 684, 688, 861 A.2d 727, 730 (2004). In ascertaining legislative intent, we first examine the plain language of the statute. *Phillips,* 384 Md. at 591, 865 A.2d at 594. We do not examine the plain language in isolation. Rather, we consider the particular and broad objectives of the legislation and the overall purpose of the statutory scheme. *Id.* If the plain language of the statute is unambiguous and consistent with the statute's apparent purpose, we give effect to the statute as it is written. *Id.*

 We find that the language of § 7–603 is plain and unambiguous and does not include an independent "benefit to the estate" requirement. We hold that in order for the personal representative to receive attorney's fees, the statute requires only that an action by the personal representative be in good faith and with just cause. The statute contains only two limitations: (1) the defense or prosecution must be "in good faith and with just cause," and (2) the expenses and disbursements must be "necessary." *See Fields v. Mersack,* 83 Md.App. 649, 654, 577 A.2d 376, 379 (1990) (noting that "The plain language of the statute [§ 7–603] makes clear ... that a personal representative may not receive 'necessary expenses and disbursements from the estate' unless he or she 'defends or prosecutes a proceeding in good faith and with just cause' ").

The Court of Special Appeals, in concluding that § 7–603 requires a "benefit to the estate," in effect added language to § 7–603. We have held that the Legislature's intent in enacting § 7–603 was to state broadly that a personal representative's defense of a will was to be at the expense of the estate. *See Webster v. Larmore,* 268 Md. 153, 170–71, 299 A.2d 814,

823 (1973) (stating that the statutory progenitor of § 7–603 "made it clear that the defense of a will whether before or after probate was to be at the expense of the estate" and that it is "quite apparent, too, that the Legislative intent, as expressed in § 7–603, was that a defense of a will by either a personal representative ... or by a person nominated as personal representative ... should similarly be at the expense of the estate").

█ Further, a review of § 7–401 makes clear that its "for the protection or benefit of the estate" requirement should not be read into § 7–603. Section 7–401(a)(1) empowers a personal representative, when authorized by a statute or the will, to act without approval by the orphans' court. Section 7–401(a)(2) provides that a personal representative not otherwise empowered by the will, common-law, or statute, may exercise the powers listed in the remainder of the section.[9] Section 7–401(y) is one of these powers applicable when there is no provision to the contrary in the will, common-law, or statutes.[10] The section's limited application makes it an unfit source for a universal limitation to the scope of § 7–603.[11]

---

**9.** Subsection 7–401(a), Exercise of powers, provides as follows:
"(1) In the performance of a personal representative's duties pursuant to § 7–101 of the this title, a personal representative may exercise all of the power or authority conferred upon the personal representative by statute or in the will, without application to, the approval of, or ratification by the court.
"(2) Except as validly limited by the will or by an order of court, a personal representative may, in addition to the power or authority contained in the will and to other common-law or statutory powers, exercise the powers enumerated in this section."

**10.** As first enacted, then Article 93 § 7–401(n) stated only "for the protection of the estate." 1969 Md. Laws, Chap. 3, § 1. When the Legislature enacted the Estates and Trusts Article, the Legislature rearranged the subsections of § 7–401. 1974 Md. Laws, Chap. 11, § 2. The new § 7–401(x) added "or benefit." *Id.* The Revisor's Note to the section stated that the changes in the section, with exceptions not relevant to § 7–401(x), were made for "language, style, and consistency." Md.Code (1974), § 7–401 of the Estates and Trusts Article.

**11.** The limited application of the powers authorized by § 7–401(a)(2) and listed in the remainder of the statute is supported by the legislative

B.

Our conclusion that § 7–603 does not contain an independent "benefit to the estate" requirement is supported by the legislative history and by this Court's case law. We have reviewed the statutory development of § 7–603, as well as § 7–602. We conclude that it is § 7–602, not § 7–603, which derived from the statutes that have served as the bases for a "benefit to the estate" requirement.

Prior to 1937, the Maryland Code did not expressly authorize an orphans' court to allow counsel fees from the estate. *See American Jewish Joint Distribution Committee v. Eisenberg,* 194 Md. 193, 199, 70 A.2d 40, 42 (1949). Instead, the Code, in a provision detailing disbursements to be included in the administration account, authorized allowance of an administrator's "costs and extraordinary expenses (not personal) which the Court may think proper to allow, laid out in the recovery or security of any part of the estate." Md.Code (1924, 1935 Cum.Supp.), Art. 93 § 5. This provision dated from

history. The General Assembly enacted § 7–401 pursuant to the recommendation of the Governor's Commission to Review and Revise the Testamentary Law of Maryland [hereinafter "Henderson Commission"]. *See Second Report of Governor's Commission to Review and Revise the Testamentary Law of Maryland, Article 93 Decedents' Estates* 108–12 (1968) [hereinafter "Henderson Commission Report"]; 1969 Md. Laws, Chap. 3, § 1. The Henderson Commission's Comment to its proposed § 7–401, included in Md.Code (1974), § 7–401 of the Estates and Trusts Article, states in pertinent part as follows:

"The remainder of Section 7–401 . . . substantially adopts the assumption of the Uniform Trustees' Powers Act that it is desirable to equip fiduciaries with the authority required for the prudent handling of assets, and extends it to the personal representative. These provisions will be applicable in all instances where a decedent dies intestate or where the will does not confer any of the enumerated powers set forth in this Section. In these instances, the personal representative may exercise any of the enumerated powers without application to, the approval of, or ratification by the Court."

Henderson Commission Report at 110–11. Thus, the powers enumerated in § 7–401 apply only when the will does not confer the powers to the personal representative.

Section 15–102(p) is inapplicable as well. Section 15–102 expressly excludes executors, administrators, and personal representatives from its definition of "fiduciary." § 15–102(a)(3)(ii).

the original 1798 Maryland codification of testamentary law, with only minor stylistic changes. 1798 Md. Laws, Chap 101, Subchap. 10, § 2. *See generally* Edgar H. Gans, *Sources of Maryland Testamentary Law, in* 18 *Transactions: Maryland State Bar Association* 193 (1913) (discussing the history of the 1798 codification). We construed this section narrowly, holding that an attorney's fees could be allowed only when the attorney worked to augment the estate or protect it from spoliation. *See Gradman v. Brown,* 183 Md. 634, 638, 39 A.2d 808, 810–11 (1944) (citing *Baltimore v. Link,* 174 Md. 111, 114–17, 197 A. 801, 803–04 (1938)). Article 93 § 5 was amended in 1939 to expand its scope. *See id.* As amended, the section provided, in relevant part, as follows,

> "Second, his allowance for costs and extraordinary expenses (not personal) which the Court may think proper to allow, laid out in the administration or distribution of the estate or in the recovery or security of any part thereof, costs to include reasonable fees for legal services rendered upon any matter in connection with the administration or distribution of the estate in respect to which the Court may believe legal services proper...."

1939 Md. Laws, Chap. 511.

In 1937, the General Assembly enacted Article 93 § 7.1937 Md. Laws, Chap. 441.[12] This new section, for the first time, authorized an attorney to petition an orphans' court and the orphans' court to allow reasonable expenses to that attorney for services rendered to the estate. *Id.* The Legislature expanded the section in 1959, adding "or to an executor or administrator of an estate" to the first line of what had become Article 93 § 10. 1959 Md. Laws, Chap. 291.

---

**12.** 1937 Md. Laws, Chap. 441, added Md.Code (1939), Art. 93 § 7, which provided as follows:

"For legal services rendered by an attorney at law to an estate, the Orphans' Court may on his own petition allow such attorney such sums as it may deem reasonable as an expense in the administration account of the Executor or of the Administrator during whose encumbency such services were rendered."

In 1966, the General Assembly first addressed a the expenses of a personal representative in defending or prosecuting proceedings. The General Assembly enacted 1966 Md. Laws, Chap. 200, which created Article 93 § 49A. Article 93 § 49A provided as follows:

"When any person designated as an executor in a will, or the administrator with the will annexed, defends the will or prosecutes any proceedings in good faith and with just cause for the purpose of having the will admitted to probate, whether successful or not, he shall be allowed out of the estate his necessary expenses and disbursements, including reasonable attorney's fees in such proceedings." [13]

The statutes took their current form in 1969. Pursuant to 1965 Md. Laws, Joint Resolution No. 23, Governor J. Millard Tawes appointed the Governor's Commission to Review and Revise the Testamentary Law of Maryland [hereinafter "Henderson Commission"].[14] On December 5, 1968, the Henderson Commission issued its Second Report, recommending legislation that would replace much of Article 93 of the Maryland Code. *See Second Report of Governor's Commission to Review and Revise the Testamentary Law of Maryland, Article 93 Decedents' Estates* (1968) [hereinafter "Henderson Commission Report"]. *See generally* Shale D. Stiller and Roger D. Redden, *Statutory Reform in the Administration of Estates of Maryland Decedents, Minors and Incompetents*, 29 Md. L.Rev. 85 (1969) (detailing the work of the Henderson Commission). In 1969, pursuant to the Henderson Commission's recommendations, the General Assembly repealed most of Article 93, moved the remainder to a new Article 93A, and enacted a replacement Article 93. *See* 1969 Md. Laws, Chap. 3, § 1.

---

13. Article 93 § 49A is nearly identical to Model Probate Code § 104 (1946). The Model Probate Code was the predecessor of the Uniform Probate Code. *See* Lawrence H. Averill, Jr., *An Eclectic History and Analysis of the 1990 Uniform Probate Code*, 55 Alb. L.Rev. 891, 896 (1992) (describing the history of the Uniform Probate Code).

14. The Henderson Commission was chaired by William L. Henderson, former Chief Judge of the Court of Appeals.

Five years later, the General Assembly repealed Article 93 and reenacted it as the Estates and Trust Article. 1974 Md. Laws, Chap. 11, § 2. Sections 7–602 and 7–603 of the Estates and Trust Article authorize the award of attorney's fees from the estate. Section 7–602 generally entitles an attorney to reasonable attorney fees and authorizes the orphans' court, upon an attorney's petition, to award attorney fees from the estate.[15] Section 7–603 addresses recovery of expenses and disbursements of a personal representative or one nominated as a personal representative and specifically covers a personal representative's expenses in defending or prosecuting a proceeding.

Sections 7–602 and 7–603 are products of the Henderson Commission Report. Both sections are identical to the provisions recommended by the Henderson Commission, except for one stylistic change to § 7–602. *Compare* Henderson Commission Report at 119–20 *with* 1969 Md. Laws, Chap. 3, § 1. The sections were reenacted as §§ 7–602 and 7–603 of the Estates and Trust Articles with only stylistic and linguistic changes. *See* Revisor's Notes to Md.Code (1974), §§ 7–602 and 7–603 of the Estates and Trust Article.

The Henderson Commission drafted §§ 7–602 and 7–603 based upon prior statutes. The Henderson Commission's Comment to § 7–602 states that the "limited statutory law on this subject is contained in § 10(Md.). The Commission has

---

**15.** Section 7–602 provides as follows:

"(a) *General.*—An attorney is entitled to reasonable compensation for legal services rendered by him to the estate and/or the personal representative.

"(b) *Petition.*—Upon the filing of a petition in reasonable detail by the personal representative or the attorney, the court may allow a counsel fee to an attorney employed by the personal representative for legal services. The compensation shall be fair and reasonable in the light of all the circumstances to be considered in fixing the fee of an attorney.

"(c) *Considered with commissions.*—If the court shall allow a counsel fee to one or more attorneys, it shall take into consideration in making its determination, what would be a fair and reasonable total charge for the cost of administering the estate under this article, and it shall not allow aggregate compensation in excess of that figure."

expanded the procedure, and the reasons, for granting compensation in the form of a counsel fee." Henderson Commission Report at 119. Article 93 § 49A is "the statutory progenitor of § 7–603." *Webster v. Larmore,* 268 Md. 153, 170, 299 A.2d 814, 823 (1973). Additionally, as discussed *supra,* § 7–603 is nearly identical to Unif. Probate Code § 3–720 (amended 1993).

Over the past century, this Court has articulated a "benefit to the estate" rule in determining whether an orphans' court could allow counsel fees from an estate,[16] although our past opinions do not explain the source of applying such a rule in this context. Indeed, some of this Court's early opinions articulated a "benefit to the estate" rule without reference to a statutory provision. *See, e.g., Knapp v. Knapp,* 151 Md. 126, 130, 134 A. 24, 25 (1926) (holding, without citation to any statute, that "The rule in such cases may be stated generally to be that parties intrusted with the administration of an estate may employ counsel to defend any action brought against them, the decision of which might adversely affect the estate, or may employ counsel to institute proceedings for the benefit of the estate, provided there was reasonable ground for instituting or defending the proceedings").

A review of this Court's decisions prior to 1939 indicates that our predecessors' use of "benefit to the estate" was rooted deeply in the requirement in Article 93 § 5 that the attorney's service was "in the recovery or security of any part of the estate." Indeed, the term "benefit to the estate" appears to have been an explication of "in the recovery or security of any part of the estate." For example, in *Mudge v. Mudge,* 155 Md. 1, 141 A. 396 (1928), we held as follows:

"Whether an estate should be charged with counsel fees for services rendered in litigation of this general character must

---

16. Our research indicates that it was in the early 1900's that the Court first employed the term "benefit to the estate" in determining the propriety of allowing counsel fees from the estate. *See Flater v. Weaver,* 108 Md. 668, 677, 71 A. 309, 312 (1908); *Koenig v. Ward,* 104 Md. 564, 566, 65 A. 345, 346 (1906); *Marshall v. Dobler,* 97 Md. 555, 558, 560, 55 A. 704, 705–06 (1903).

be determined largely from the circumstances of each particular case, having due regard for the provisions of the statute ... authorizing the allowance of counsel fees where the services are rendered in the recovery or security of the whole or some part of the estate. To be allowable, the services of the attorney, for whom a fee is asked, should, in some way, be beneficial to the estate, either by the enlargement or the protection of it, and not where the only question to be decided is to whom the estate, or any part of it, shall go and in what proportions."

*Id.* at 3–4, 141 A. at 397; *see also Horton v. Horton,* 158 Md. 626, 634, 149 A. 552, 555 (1930) (stating that "Counsel fees can only be allowed for services rendered for the 'recovery and security of the estate.' *Ex parte Young,* [8 Gill 285 (1849)]; Code, art. 93, § 5. And it is not apparent how services rendered in defending letters of administration, which were ultimately revoked because they were prematurely or improvidently issued, can be said to be for the benefit of the estate"); *Koenig v. Ward,* 104 Md. 564, 566, 65 A. 345, 346 (1906) (holding that counsel fees were not incurred to benefit the estate and explaining that the purpose of the proceeding was not "to recover the estate, or to protect it from spoliation").

With the 1939 amendment to Article 93 § 5, the statutory basis for "benefit to the estate" appears to have shifted from "in the recovery or security ... of the estate" to "legal services rendered ... to an estate." The amendment to § 5 expanded the scope of services for which attorney's fees could be allowed from "in the recovery or security" to "in the administration or distribution of the estate or in the recovery or security of any part thereof." 1939 Md. Laws, Chap. 511. With this change, the rooting of benefit to the estate in "recovery or security of any part of an estate" appears to have ceased. Nonetheless, the benefit to the estate rule seems to have migrated to another part of § 5. Along with the 1939 amendment to § 5, the coincident enactment of § 7 appears to have stimulated the rule's movement. The language of § 7, "legal services rendered ... to an estate," became the other statutory support for the benefit to the estate rule.

The move from "in the recovery or security ... of the estate" to "legal services rendered ... to an estate" is reflected in this Court's cases from the 1940's and 1950's. In *Gradman v. Brown*, 183 Md. 634, 39 A.2d 808 (1944), a guardian and next friend of the legatees sought attorneys' fees from the estate to pay for the lawyers he employed to except to the executor's administration account and to appeal the denial of the exception. We reviewed the amendment to § 5, concluding that the Legislature had changed our rule articulated in *Mudge*, 155 Md. at 4, 141 A. at 397, and *Link*, 174 Md. at 117, 197 A. at 804, that fees could not be allowed for services in the administration or distribution of the estate. *See Gradman*, 183 Md. at 638–39, 39 A.2d at 811. We then turned our attention to the use of the terms "legal services rendered" in Article 93 § 5 and "legal services rendered ... to an estate" in Article 93 § 7. We held that as the attorneys' fees incurred for the legatees' interests were services "not rendered to the estate, the Orphans' Court was without power to allow them a fee." *Gradman*, 183 Md. at 641, 39 A.2d at 812; *see also American Jewish Joint Distribution Committee v. Eisenberg*, 194 Md. 193, 199, 70 A.2d 40, 42 (1949) (reviewing the amendment to § 5 and the enactment of § 7 and stating that "it cannot be supposed that the Legislature, if it had the power, intended that counsel fees shall be allowed for services not rendered to the estate").

While neither *Gradman* nor *Eisenberg* used the term "benefit to the estate," this Court employed a "benefit to the estate" standard based on "legal services rendered" in *Sullivan v. Doyle*, 193 Md. 421, 67 A.2d 246 (1949). In that case, this Court considered whether an administrator who misled a person into renouncing her right to administer the estate could be allowed attorney's fees for an unsuccessful defense against removal. In holding that attorney's fees could not be allowed, we explained that "legal services rendered by an attorney in defending letters of administration which are revoked cannot be said to be for the benefit of the estate." 193 Md. at 432, 67 A.2d at 251. We then addressed the

amendment to § 5 and the enactment of § 7 and stated as follows:

"The explicit purpose of this section [§ 7], obviously intended for the protection of attorneys, is to authorize the Court to allow counsel fees only for legal services 'rendered to an estate.' In the case before us the attorney, in defending respondent, did not render any legal services to the estate. He did not either add to or protect the estate."

*Id.; see also Colley v. Britton,* 210 Md. 237, 250, 123 A.2d 296, 303 (1956) (citing *Gradman, Eisenberg,* and *Sullivan* and holding that the attorney's fee should not have been allowed because no service was rendered to the estate). Thus, by the time of *Sullivan,* the benefit to the estate rule, formally rooted in the "in the recovery or security of any part of the estate" clause of § 5, appears to have been grafted firmly onto the "legal services rendered" and "legal services rendered ... to an estate" clauses of §§ 5 and 7 respectively.

This conception that a "benefit to the estate" was required from the statutory use of "legal services rendered" endured through the 1969 revision of Article 93 in § 7–602—but not in § 7–603. As noted *supra,* Article 93 § 7, which subsequently became Article 93 § 10, was the progenitor of § 7–602. In relevant part, § 7–602 contains very similar language to § 7. *Compare* Art. 93 § 7 (providing that "For legal services rendered by an attorney at law to an estate, the Orphans' Court may ... allow ... such sums as it may deem reasonable") *with* § 7–602 (providing that "An attorney is entitled to reasonable compensation for legal services rendered by him to the estate and/or the personal representative"). *See Clark v. Rolfe,* 279 Md. 301, 306–07, 368 A.2d 463, 467 (1977) (noting that language from Article 93 § 10 was "carried over" into § 7–602, and, relying upon *Gradman,* holding that the orphans' courts may in rare cases allow attorney's fees to an individual who brings an action against the personal representative "for the benefit of the estate as a whole").

Contrary to § 7–602, § 7–603 does not contain a "legal service rendered ... to an estate" clause, and no decision of

this Court has held that the "benefit to the estate" rule was carried over to § 7–603.[17]

## C.

Our conclusion that there is no "for the protection or benefit of the estate" requirement in § 7–603 is consistent with the decisions of other state courts interpreting similar statutory language. Although Maryland has not adopted the Uniform Probate Code, § 7–603 is almost identical to § 3–720 of the Uniform Probate Code. The Uniform Code provides as follows:

> "If any personal representative or person nominated as personal representative defends or prosecutes any proceeding in good faith, whether successful or not he is entitled to receive from the estate his necessary expenses and disbursements including reasonable attorneys' fees incurred."

Unif. Probate Code § 3–720 (amended 1993). The only substantive difference between § 7–603 and the Uniform Probate Code § 3–720 is that § 7–603 contains a "just cause" requirement.[18]

---

**17.** At the end of this review of this Court's case law on the "benefit to the estate" rule, we note four cases that apply a "benefit to the estate" rule, but apparently outside the statutory concept we have discussed *supra.* In these four cases, this Court held that a personal representative must pay court costs because the appeal did not benefit the estate and the awarding of costs is discretionary. *See Alston v. Gray,* 303 Md. 163, 169, 492 A.2d 900, 903 (1985); *Webster v. Larmore,* 270 Md. 351, 354, 311 A.2d 405, 406–07 (1973); *Hayman v. Messick,* 252 Md. 384, 393, 249 A.2d 695, 700 (1969); *Watkins v. Barnes,* 203 Md. 518, 526, 102 A.2d 295, 299 (1954). We do not consider these cases persuasive in our determination of the applicability of a "benefit to the estate" rule to § 7–603, because these cases do not cite to any authority for their employment of a "benefit to the estate" rule.

**18.** As originally enacted, Article 93 § 7–603 contained the Uniform Probate Code's phrase "whether successful or not." 1966 Md. Laws, Chap. 200, § 1. When the Legislature repealed Article 93 and reenacted it as the Estates and Trusts Article, the Legislature changed "whether successful or not" to "regardless of the outcome of the proceeding." 1974 Md. Laws, Chap. 11, § 2. The Revisor's Note indicates that the only changes to the statute were stylistic and linguistic. Md.Code (1974), § 7–603 of the Estates and Trusts Article.

Several of our sister states that have adopted the Uniform Probate Code have held that the probate statute does not contain a separate "benefit to the estate" requirement. *See Enders v. Parker,* 66 P.3d 11, 14 (Alaska 2003); *In re Estate of Gordon,* 207 Ariz. 401, 87 P.3d 89, 91–94 (2004); *In re Estate of Evenson,* 505 N.W.2d 90, 92 (Minn.Ct.App.1993); *In re Estate of Watkins,* 243 Neb. 583, 501 N.W.2d 292, 296 (1993); *In re Estate of Frietze,* 126 N.M. 16, 966 P.2d 183, 187 (1998). These states base their holdings on the plain language of the statute. *See, e.g., Frietze,* 966 P.2d at 187 (finding the statute's language unambiguous and accordingly holding that the statute has no "benefit to the estate" requirement). Other states have held that "benefit to the estate" is an additional necessary condition along with "good faith." *See In re Estate of Kolouch,* 128 Idaho 186, 911 P.2d 779, 786 (1996); *In re Estate of Wulf,* 526 N.W.2d 154, 156–57 (Iowa 1994); *In re Estate of Flaherty,* 484 N.W.2d 515, 518 (N.D.1992); *In re Estate of Klauzer,* 604 N.W.2d 474, 481 (S.D.2000). None of these states, however, explain how they derive this requirement from the statute. *See Gordon,* 87 P.3d at 92 (rejecting those cases that hold that "benefit to the estate" is a requirement because "none explains how or why the benefit to the estate requirement became part of their statutory reimbursement formula, other than to cite to similarly unenlightening precedents, some of which predate that jurisdiction's adoption of the Uniform Probate Code").

## IV.

Under § 7–603, a personal representative is entitled to receive necessary expenses and disbursements from the estate when the personal representative defends or prosecutes a proceeding *in good faith and with just cause.* It is the personal representative's burden to establish good faith and just cause. *See Wulf,* 526 N.W.2d at 156; *In re Estate of Petersen,* 570 N.W.2d 463, 466 (Iowa Ct.App.1997); *In re Estate of Odineal,* 220 Neb. 168, 368 N.W.2d 800, 801 (1985). The existence of good faith and just cause is a question of fact to be determined by the orphans' court based upon all of the

evidence. *See Fields v. Mersack,* 83 Md.App. 649, 658–59, 577 A.2d 376, 381 (1990) (stating that "it is a factual question whether a personal representative has acted in good faith and with just cause in defending or prosecuting a caveat proceeding"); *In re Andrews' Appeal from Probate,* 78 Conn.App. 441, 826 A.2d 1267, 1274 (2003); *In re Estate of Herbert,* 91 Hawai'i 107, 979 P.2d 1133, 1135 (1999); *In re Estate of Brady,* 308 N.W.2d 68, 71 (Iowa 1981); *Odineal,* 368 N.W.2d at 803. If the orphans' court concludes that the personal representative acted in good faith and with just cause, then the personal representative is entitled to his necessary expenses and disbursements "regardless of the outcome of the proceeding." § 7–603; *see In re Estate of Reimer,* 229 Neb. 406, 427 N.W.2d 293, 295 (1988); *Flaherty,* 484 N.W.2d at 518. The orphans' court, however, may consider the outcome of the proceeding in its review of all the evidence to determine whether the personal representative acted in good faith and with just cause.

Section 7–603 does not define the terms "in good faith" or "with just cause," and we have not had the occasion to consider the meaning of those phrases as used in this statute. "Good faith" has been addressed in the probate context by several of our sister states in interpreting similar statutory language. For example, "good faith" has been defined as honesty in fact. In *Watkins,* the Nebraska Supreme Court defined good faith for the purpose of its probate statute as "honesty in fact concerning conduct or a transaction" and noted that the term "is distinguished from mere negligence or an honest mistake." 501 N.W.2d at 296 (citations omitted). In *Gordon,* the Arizona Court of Appeals stated that good faith "generally connotes honesty-in-fact accompanied by honorable intentions." 87 P.3d at 93.

As we have indicated, *supra,* the Maryland statute requires "just cause," in addition to "good faith." Although the Uniform Probate Code does not contain a "just cause" requirement, several other states have included in their statutes a "just cause" requirement. *See* Ind.Code § 29–1–10–14 (1976, 2000 Repl.Vol., 2004 Cum.Supp.); Iowa Code § 633.315 (1992,

2004 Cum.Supp.). *Black's Law Dictionary* 235 (8th ed.2004) defines "just cause" as a "legally sufficient reason." In *In re Estate of Goldman*, 813 N.E.2d 784 (Ind.App.2004), the intermediate appellate court concluded that "[w]here, as here, the party contesting the validity of a will wins the trial on the merits, the will contest presumably was brought with 'just cause.' " *Id.* at 787–88.

The concepts of "good faith" and "just cause" are intertwined. In *Management Personnel Serv. v. Sandefur*, 300 Md. 332, 478 A.2d 310 (1984), an employment case, we quoted *Black's Law Dictionary* 775 (5th ed.1979), which defined just cause in part as a "cause outside legal cause, which must be based on reasonable grounds, and there must be a fair and honest cause or reason, regulated by good faith." *Id.* at 340, 478 A.2d at 314.

While we hold that § 7–603 does not contain an independent "benefit to the estate" requirement, we consider whether "benefit to the estate" is a relevant factor for an orphans' court's determination of good faith and just cause. An Arizona intermediate appellate court has concluded that while the Arizona probate statute contains no benefit to the estate requirement, whether one *acts* to benefit the estate is a factor to be considered in assessing good faith. In *In re Estate of Gordon*, 207 Ariz. 401, 87 P.3d 89 (2004), the court discussed the significance of the benefit to the estate concept. Concluding that the determination of "good faith" is an objective inquiry as opposed to a subjective one, the court explained as follows:

"An objective determination of the state of mind possessed by an actor in connection with his conduct is usually accomplished by examining all the circumstances surrounding the conduct. From these circumstances the fact-finder can infer the relevant state of mind which, as regards § 14–3720 good faith, would be the motive and purposes of the personal representative in conducting litigation and whether she was honest in her dealings. And it is important to note that among the circumstances to be considered would be any subjective expressions by the personal representation re-

garding her motives, purposes, or honesty-in-fact. While not controlling, these expressions are relevant and must also be included for consideration when conducting an objective inquiry.

"It is in this objective inquiry setting that we find a place for the benefit to the estate concept. An objective method of determining good faith includes considering all relevant surrounding circumstances. Benefit to the estate is one such circumstance that can assist in determining the motivation with which litigation was conducted. Together with all other relevant circumstances, whether the litigation constituted a benefit will help the fact-finder ascertain whether a personal representative litigated in good faith.

"We emphasize that the presence or absence of a benefit to the estate merely tends to establish the existence or not of good faith and is only one factor to be considered. It would be inappropriate to treat the concept as an independent requirement that alone could resolve the issue. According it such conclusive effect would constitute engrafting onto the statute an element that the legislature did not include. Our effort, consequently, is to demonstrate that benefit to the estate is merely a helpful investigative aid to a court charged with objectively determining the existence of good faith."

*Id.* at 94 (citations omitted).

We agree and conclude that while § 7–603 does not contain an independent "benefit to the estate" requirement, that concept is a factor to be considered in the objective inquiry into whether the personal representative acted in good faith and with just cause.

A personal representative whose expenses are incurred in pursuit of his personal interest, rather than a substantial estate interest, is not acting to benefit the estate.[19]

___

19. For example, we have held that an executor claiming money or property from an estate may not be allowed attorney's fees. *See Hayden v. Stevens*, 179 Md. 16, 19, 16 A.2d 922, 923 (1940) (holding

The concept of benefit to the estate is not limited to monetary benefits. A personal representative acts to benefit the estate

under Md.Code (1939), Art. 93 § 5, that the executor advancing his own personal claim against the estate was not acting "for and on behalf of the estate"). We also have held that administrators who are aware that their letters of administration were granted prematurely or improvidently are not entitled to counsel fees from the estate, because they pursued their personal interests and did not benefit the estate. *See Sullivan v. Doyle,* 193 Md. 421, 431–32, 67 A.2d 246, 249–51 (1949) (holding that the letters of administration granted to a person who misled decedent's daughter into renouncing her right to administer the estate should have been revoked and that counsel fees should not have been allowed); *Horton v. Horton,* 158 Md. 626, 633–35, 149 A. 552, 554–56 (1930) (affirming the revocation of a person's appointment and holding under Article 93 § 5 that she was not entitled to counsel fees, because she knew that the other potential administrators had not received notice of her application for letters of administration).

Other state courts have held that a personal representative who incurs counsel fees in pursuit of his or her personal interest does not benefit the estate. *See In re Estate of Estes,* 134 Ariz. 70, 654 P.2d 4, 14 (1982); *In re Estate of Stephens,* 117 Ariz. 579, 574 P.2d 67, 73 (1978); *In re Estate of Painter,* 671 P.2d 1331, 1334 (Colo.App.1983); *In re Estate of Eliasen,* 105 Idaho 234, 668 P.2d 110, 117 (1983); *In re Estate of Kolouch,* 128 Idaho 186, 911 P.2d 779, 786 (1996); *In re Estate of Wulf,* 526 N.W.2d 154, 156–57 (Iowa 1994).

The Comment accompanying the Henderson Commission's proposed § 7–603 supports the position that personal representatives acting in pursuit of their personal interest are not acting to benefit the estate and are unlikely to be acting in good faith. The Henderson Commission's Comment stated, "Litigation prosecuted by a personal representative for the primary purpose of enhancing his prospects for compensation would not be in good faith. This follows [§ 3–720 of the Uniform Probate Code] and represents the Maryland law. See §§ 6 and 49A (Md.)." Henderson Commission Report at 120. Section 6 was the former Article 93 § 5 cited in *Hayden, Horton,* and *Sullivan. See* Md.Code (1957, 1964 Repl.Vol.), Art. 93 § 6. The first sentence of the Henderson Commission's Comment is a verbatim quote from the Editorial Board Comment to § 3–720 of the Uniform Probate Code. Other states have cited the Uniform Probate Code's Comment in holding that a personal representative who pursued his personal interest did not act in good faith. *See In re Estate of Odineal,* 220 Neb. 168, 368 N.W.2d 800, 801, 804 (1985) (citing the Uniform Probate Code's Comment as quoted in Nebraska's statute and holding that the trial court could determine that a personal representative did not act in good faith when the legal work was aimed only at generating a fee); *Oliver v. City of Larimore,* 540 N.W.2d 630, 634 (N.D.1995) (relying on the Uniform Probate Code's Comment and holding that a personal representative was not entitled to counsel fees for one of the law firms he hired, because that law firm pursued his personal interest in increasing his commissions).

when he or she seeks to effectuate the testator's intent. In *In re Estate of Flaherty,* 484 N.W.2d 515 (1992), the North Dakota Supreme Court stated as follows:

> "A 'benefit' to an estate certainly includes services that bring about an enhancement in value or an increase in the assets of the estate. However, we believe that a 'benefit' to the estate is not to be measured solely in monetary terms, but can also include a personal representative's good faith attempts to effectuate the testamentary intention set forth in a facially valid will."

*Id.* at 518 (citations omitted); *accord Gordon,* 87 P.3d at 94; *In re Estate of Hass,* 643 N.W.2d 713, 720 (N.D.2002); *In re Estate of Peterson,* 561 N.W.2d 618, 624 (N.D.1997); *see also In re Estate of Lewis,* 442 So.2d 290, 292 (1983) (stating that benefit "also includes services that are successful in simply effectuating the testamentary intentions set forth in the will"); *Wulf,* 526 N.W.2d at 157 (stating that an action may benefit an estate "if it determines or represents the decedent's desires and intentions as expressed in the will").

That a personal representative must defend and prosecute proceedings in order to effectuate the testator's intent is rooted deeply in Maryland law. We long have held that a personal representative is obligated to defend suits seeking to remove him and that he should not incur the expenses from the litigation. In *Ex parte Young,* 8 Gill 285 (1849), we addressed whether an administrator who defends against an action to replace her may claim counsel fees from the estate. We analogized the administrator to an executor defending a will, noting that "the practice of allowing to executors the counsel fees expended in the successful defense of a will . . . is well established." *Id.* at 286.[20] We described an executor and administrator as bound by the "trust and confidence" of the testator and law respectively. *Id.* 286. We then stated as follows:

---

20. The term "personal representative" includes both executors and administrators. § 1–101(q).

"Where this right is contested, what is the party entitled, under the law, to do? His relation to the estate, binds him to defend it. But, in the view of the respondents, he must either engage in the controversy at his own personal cost, or abandon the right. An obstinate and pertinacious claimant thus presenting himself, may drive every legitimate party from the contest, and defeat the whole policy of the law in its selection of the proper person to administer. The prospect of an expensive litigation, may thus avail upon a spurious pretext, to secure to a stranger the administration of an estate to which he can have no claim."

*Id.* at 286–87. In other words, if courts would not allow personal representatives to pay their litigation expenses from the estate, then a dedicated usurper could initiate litigation and force the rightful personal representative to step down. We then addressed directly the contention that the personal representative's defense of his position invokes a personal right, rather than a binding obligation. We stated,

"There is no force in the objection, that it is a mere personal right, and the party may elect to claim or abandon it. His election is worthless to him, when you take from him the proper means to assert it. Before he can execute the office with which the law clothes him, he must establish his right to exercise it. If the right is controverted, on grounds over which he has no control, and not occasioned by his own default, and he succeeds in maintaining it when litigated, he is entitled to such costs and expenses as the Court may find he has reasonably incurred; and the decree of the Orphans' Court, dismissing the petition, is, therefore, reversed."

*Id.* at 287. Thus, we described a personal representative who successfully defended an attempt to remove him as "entitled" to his litigation costs, subject to the orphans' court determination of reasonableness of the expenditures. *Id.; accord Sullivan v. Doyle,* 193 Md. 421, 431, 67 A.2d 246, 250 (1949) (citing *Ex parte Young* and stating that "The rule has long been established that where a person has the right to administer upon an estate he is entitled to pay out of the estate reason-

able counsel fees incurred in the successful defense of that right").

It is clear that a personal representative who defends successfully an attempt to remove him or her is acting out of duty. The personal representative is not acting out of personal interest, but rather is acting to benefit of the estate. To hold otherwise, as we stated in *Ex parte Young,* most often would put the personal representative in an impossible situation, between the obligation to protect the testator or court's intent and a personal financial predicament. As such, it matters not that Goldman articulated his desire to clear his name as a motivation for his efforts to defend against removal. Goldman was bound as personal representative to protect Hartz's interest, as Hartz stated in his will, for Goldman to serve as personal representative. Goldman acted to benefit the estate.

We have held *supra* that "benefit to the estate" is a factor in the "in good faith and with just cause" requirement. We conclude that Goldman acted in good faith and with just cause.

The beneficiaries argue that Goldman acted in bad faith based on his conflicts of interests. This issue was litigated and decided by the Circuit Court and the Court of Special Appeals in *Goldman I.* In denying the beneficiaries' surcharge request, the Circuit Court found that Goldman's conflicts of interest did not arise to bad faith. The Court of Special Appeals agreed. The court stated as follows:

"Notwithstanding the beneficiaries' protest to the contrary, we are not at all convinced that the court erred, much less clearly so. We have carefully reviewed the court's twenty-three page opinion deciding the removal issue. We discern no facts recounted, and no findings made, that remotely suggest bad faith on the part of Goldman. Nor was there offered at trial any undisputed evidence of Goldman's acting in bad faith, as that term is employed in this context."

The beneficiaries next advance three arguments for the proposition that Goldman acted in bad faith in pursuing the litigation. We reject each of the beneficiaries' arguments.

First, the beneficiaries assert that Goldman should have sought the Orphans' Court's approval prior to hiring Piper Rudnick. This contention ignores the express language of Hartz's will, which granted Goldman the power to appoint attorneys without the Orphans' Court's authorization. *See* section 7.1 of the will granting "Fiduciaries" the power to "appoint agents to act on behalf of my Fiduciaries, including, without limitation, attorneys, accountants and investment counsel, and to delegate discretionary power to such agents." Section 7–401(a) provides that "a personal representative may exercise all of the power or authority conferred upon the personal representative by statute or in the will, without application to, the approval of, or ratification by the court." Goldman did not need the approval of the Orphans' Court before retaining counsel.

Second, the beneficiaries argue that Goldman should have resigned rather than defend against removal. They support this argument by citing Goldman's petition to close the estate, which they claim indicates that there was no need to litigate the removal. They also point to Goldman's settlement offer, which included an offer to resign. Goldman cannot be faulted for refusing to resign. In pointing to Goldman's desire to close the estate, the beneficiaries ignore their opposition to closing the estate and the Orphans' Court decision not to close the estate. Similarly, in pointing to Goldman's offer to resign as part of a settlement, the beneficiaries ignore the fact that this offer was contingent upon the beneficiaries releasing Goldman from their claims against him. The beneficiaries did not accept this offer and continued their attempts to surcharge Goldman. More importantly, as discussed *supra,* our aim in *Ex parte Young* was to *prevent* beneficiaries from compelling personal representatives to resign; there we were concerned that an "obstinate and pertinacious claimant thus presenting himself, may drive every legitimate party from the contest." 8 Gill at 287.

Third, the beneficiaries argue that Goldman should have appealed his removal directly to the Court of Special

Appeals, rather than to the Circuit Court. The beneficiaries contend that this choice resulted in a long eleven day *de novo* trial and the attorney's fees. Md.Code (1973, 2002 Repl.Vol., 2004 Cum.Supp.), § 12–501 of the Courts and Judicial Proceedings Article permits a party to appeal directly to the Court of Special Appeals from a final judgment of an orphans' court. Section 12–502 authorizes a party to appeal to the circuit court, instead of directly appealing to the Court of Special Appeals.[21] Goldman did not act in bad faith by proceeding in a manner authorized by statute.

The other requirement under § 7–603 is that the "expenses and disbursements" be "necessary." Hartz's counsel represented at oral argument before this Court that Piper Rudnick's fees were reasonable and that the amount of the fees was not an issue on appeal. Accordingly, we do not address the issue.

*JUDGMENT OF THE ORPHANS' COURT FOR FREDERICK COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEES.*

---

21. The option to appeal to a circuit court is not available in Harford and Montgomery counties. Md.Code (1973, 2002 Repl.Vol., 2004 Cum. Supp.), § 12–502(a)(2) of the Courts and Judicial Proceedings Article.